**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 1, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ANTHONY STONECIPHER and
MELISSA STONECIPHER,

        Plaintiffs - Appellants,

    v.

SPECIAL AGENTS CARLOS
VALLES; JOHN ESTRADA; DAVID
TABULLO; McCARTHY; KING; and
JORGENSEN,

        Defendants - Appellees.

No. 13-2124

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. 2:11-CV-00417-JCH-GBW)**

---

Derek Garcia, Law Office of Derek V. Garcia, P.C., Albuquerque, New Mexico,
for Appellants.

Edward Himmelfarb, Appellate Staff (Stuart F. Delery, Assistant Attorney
General, Steven Yarbrough, United States Attorney, and Barbara L. Herwig,
Appellate Staff, with him on the brief), United States Department of Justice, Civil
Division, Washington, D.C., for Appellees.

---

Before **KELLY**, **TYMKOVICH**, and **McHUGH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Anthony and Melissa Stonecipher became targets of an investigation into their purchases and sales of firearms and explosives. During the investigation, federal officers discovered that Mr. Stonecipher had pleaded guilty in 2007 to a misdemeanor crime of domestic violence in Missouri. One of the officers, Carlos Valles, concluded Mr. Stonecipher had violated federal law, which makes it illegal for anyone convicted of even a misdemeanor crime of domestic violence to possess a firearm.

Acting on this knowledge, Valles obtained a search warrant for the Stoneciphers' home. Valles executed the search and arrested Mr. Stonecipher, who was subsequently charged with unlawful firearms possession.

It turns out, however, that Mr. Stonecipher had not been convicted of a misdemeanor crime of domestic violence for purposes of federal law. Prosecutors soon learned that the Missouri conviction did not count because the sentence had been suspended and, under Missouri law, a suspended sentence in these circumstances does not amount to a conviction. With this knowledge, the government dismissed the criminal complaint.

The Stoneciphers filed a *Bivens*[1] action against Valles and other law enforcement officers involved in the investigation, alleging violations of their Fourth and First Amendment rights in connection with the search of their home

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

and Mr. Stonecipher's arrest and prosecution. The district court granted summary judgment for the defendants on the grounds of qualified immunity. The Stoneciphers appealed the grant of summary judgment on their claims for unreasonable search and seizure, unlawful arrest, malicious prosecution, and violation of their First Amendment rights.

Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the judgment of the district court. For purposes of qualified immunity, Valles had enough information to (1) conclude he had probable cause to search the Stoneciphers' home; and (2) arrest and file charges based on Mr. Stonecipher's possession of firearms and explosives. Further, there was no evidence that Mr. Stonecipher's arrest and prosecution were in retaliation for the exercise of his First Amendment rights.

## I. Background

The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began an investigation into Melissa Stonecipher's purchase of handguns from a federally licensed firearms dealer in New Mexico. She purchased fourteen handguns over the course of ten months, including twelve on a single day. The ATF also received information that her husband, Anthony, was attempting to sell firearms from their house.

Special Agent Valles and his colleague, John Estrada, went undercover to the Stoneciphers' house and purchased a firearm and two explosives from Mr.

Stonecipher. After testing, the ATF determined the sale of the explosives ran afoul of 18 U.S.C. § 842(a)(1), which prohibits sales of certain types of explosive materials without a federal license. Valles also confirmed that Mr. Stonecipher bought and sold firearms, gun parts, and ammunition online and that the Stoneciphers did not have federal firearms or explosives licenses.

Valles investigated Mr. Stonecipher's criminal history. During this investigation, Valles obtained a certified court document showing that Mr. Stonecipher pleaded guilty in Missouri to a misdemeanor charge of "Domestic Assault – Third Degree" on April 16, 2007. The document also showed the Missouri court imposed a suspended imposition of sentence, which required Mr. Stonecipher to serve one year of probation and that he was discharged from probation after serving the one-year term. In addition to the state court file, Valles obtained a report from the National Instant Criminal Background Check System (NICS) that indicated Mr. Stonecipher had been denied the right to purchase a gun in 2007 because of a conviction for domestic assault. He also obtained a National Criminal Information Center (NCIC) report that noted Mr. Stonecipher's guilty plea to the Missouri domestic assault charge.

Valles and Special Agent Joel Marquez sought legal advice from the United States Attorney as to whether Mr. Stonecipher's firearms possession and sale violated 18 U.S.C. § 922(g)(9), which makes it a crime for anyone convicted of a misdemeanor crime of domestic violence to possess a firearm. An Assistant

United States Attorney, Ron Jennings, reviewed Mr. Stonecipher's file and concluded that he was prohibited from possessing firearms under the statute due to his previous domestic assault conviction.

Valles prepared an application and supporting affidavit for a search warrant for the Stoneciphers' house. Valles averred that Mr. Stonecipher was likely in violation of § 922(g)(9) because Mr. Stonecipher had been convicted of a misdemeanor crime of domestic violence in Missouri in 2007. The application, however, did not mention that Mr. Stonecipher received a suspended imposition of sentence for the crime, which the documents disclosed. Valles also mentioned in his affidavit that the NICS report indicated Mr. Stonecipher was previously denied the right to purchase a firearm because of his conviction, but he omitted that the report also noted his denial status was overturned.

The application also averred the Stoneciphers were likely in violation of 18 U.S.C. § 842(a)(1), which prohibits unlicensed dealing in explosive materials, and that Mr. Stonecipher was likely in violation of 26 U.S.C. § 5861(d), which prohibits a person from possessing firearms not registered to him. Jennings approved the final version of the warrant application. Valles then submitted the application and supporting affidavit to a magistrate judge, who issued the search warrant.

Valles, along with other ATF agents and state and local law enforcement officers, executed the search warrant. Valles and Estrada arrived undercover at

the Stoneciphers' home and asked Mr. Stonecipher to inspect a weapon in their car. The agents then arrested Mr. Stonecipher, placed him in a police car, and read him his Miranda rights. He refused to answer the officers' questions, asserted the officers were violating his Second Amendment rights, and maintained his innocence of any crime. Mrs. Stonecipher was patted down, handcuffed, led outside, and detained while agents searched the house. She was not arrested.

While the agents were conducting the search, Mr. Stonecipher asked for permission to retrieve documents from inside the house. One document was a letter to Mr. Stonecipher from his criminal defense attorney in Missouri. The letter, written shortly after Mr. Stonecipher pleaded guilty, noted that a guilty plea to domestic assault, assuming Mr. Stonecipher served his probation, would not count as a conviction on his record. Mr. Stonecipher read part of the letter aloud to Valles and other agents, and Valles read the letter himself. Because the statement conflicted with Jennings's legal advice, the agents continued the search.

The next day, Valles informed Jennings about the contents of the letter from Mr. Stonecipher's attorney, but Jennings advised Valles to proceed with the case. Valles prepared a criminal complaint and supporting affidavit, which Jennings approved, and Valles filed the criminal complaint in federal district court. Five days later, upon discovering that Mr. Stonecipher's previous domestic assault was not a qualifying conviction, the prosecuting United States Attorney

filed a motion to have the complaint dismissed, which the magistrate judge granted.

The Stoneciphers brought a civil rights action against Valles and five other ATF agents involved in the search. The defendants moved to dismiss some claims on qualified immunity grounds. The court held that the defendants were entitled to qualified immunity because they reasonably concluded on the facts available that they had probable cause to search the house and arrest and file charges against Mr. Stonecipher.

## II. Analysis

The Stoneciphers contend the officers are not entitled to qualified immunity because the search, as well as Mr. Stonecipher's arrest and prosecution, were unsupported by probable cause, in violation of the Fourth Amendment. They also contend Mr. Stonecipher was arrested and prosecuted in retaliation for exercising his First Amendment rights.[2]

---

[2] The Stoneciphers' opening brief mentions an excessive force claim arising from the arrest as an issue presented for review. The argument section of the brief, however, makes no mention of the claim. Because "[a]rguments inadequately briefed in the opening brief are waived," *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1049 n.1 (10th Cir. 2008), we will not review the excessive force claim. Regardless, we agree with the district court that the defendants are entitled to qualified immunity on this claim.

### A. Fourth Amendment Claims

#### 1. Qualified Immunity Standard

We review grants of summary judgment based on qualified immunity de novo. *Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1172 (10th Cir. 2013). At the summary judgment stage in a qualified immunity case, the court may not weigh evidence and must resolve genuine disputes of material fact in favor of the non-moving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

When a defendant raises qualified immunity as a defense, "a plaintiff must properly allege a deprivation of a constitutional right and must further show that the constitutional right was clearly established at the time of the violation." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982)).

Officers must have probable cause to initiate a search, arrest, and prosecution under the Fourth Amendment. Probable cause is not a precise

-8-

quantum of evidence—it does not, for example, "require the suspect's guilt to be 'more likely true than false.' Instead, the relevant question is whether a 'substantial probability' existed that the suspect committed the crime, requiring something 'more than a bare suspicion.'" *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (citations omitted); *see also United States v. Martin*, 613 F.3d 1295, 1302 (10th Cir. 2010) ("As the standard itself indicates, *probable* cause does not require metaphysical certitude or proof beyond a reasonable doubt. Probable cause is a matter of probabilities and common sense conclusions, not certainties. At the same time, probable cause requires, of course, more than mere suspicion that unlawful activity is afoot." (internal quotation marks and citations omitted)).

In the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law "by asking whether there was 'arguable probable cause'" for the challenged conduct. *Kaufman*, 697 F.3d at 1300. Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists. *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007). A defendant "is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Id.*

A neutral magistrate judge's issuance of a warrant is "the clearest indication that the officers acted in an objectively reasonable manner or . . . in 'objective good faith.'" *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922–23 (1984)). But "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Id.* If "it is obvious that no reasonably competent officer would have concluded that a warrant should issue," the warrant offers no protection. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity will not be granted "where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt*, 132 S. Ct. at 1245 (internal quotation marks omitted).

Nor will a warrant protect officers who misrepresent or omit material facts to the magistrate judge. The burden is on the plaintiff to "make a substantial showing of deliberate falsehood or reckless disregard for truth" by the officer seeking the warrant. *Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir. 1990). This test is an objective one: when there is no dispute over the material facts, a court may determine as a matter of law whether a reasonable officer would have found probable cause under the circumstances. *Cortez*, 478 F.3d at 1120–21 ("The conduct was either objectively reasonable under existing law or it was not."); *see also Fleming v. Livingston Cnty.*, 674 F.3d 874, 881 (7th Cir. 2012) (describing

the inquiry into reckless disregard as objective). Qualified immunity applies equally to reasonable mistakes of law and fact. *See Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

To establish reckless disregard in the presentation of information to a magistrate judge, "there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations . . . and [a] factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994). "[T]he failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth. To the contrary, it is generally considered to betoken negligence at most." *Id.* (internal quotation marks and citations omitted); *see also Moldowan v. City of Warren*, 578 F.3d 351, 388 (6th Cir. 2009) (asserting the exculpatory value of evidence must be "apparent" and that "the police cannot be held accountable for failing to divine the materiality of every possible scrap of evidence"); *Wilson v. Russo*, 212 F.3d 781, 787–88 (3d Cir. 2000) (holding that "omissions are made with reckless disregard if an officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know" and that assertions are in reckless disregard of the truth if

they are made "with a high degree of awareness of the statements' probable falsity" (internal quotation marks and alterations omitted)).

With this legal framework in mind, we turn to the Stoneciphers' arguments.

### 2. Unlawful Search and Entry

The Stoneciphers first argue the district court erred in concluding the officers were entitled to qualified immunity for their search and entry without arguable probable cause.[3] They allege Valles submitted a warrant application, in reckless disregard for the truth, that falsely averred Mr. Stonecipher had been "convicted" of a misdemeanor crime of violence and omitted that Mr. Stonecipher received a suspended imposition of sentence for the crime. The Stoneciphers'

---

[3] The Stoneciphers do not identify which of the various defendants committed the particular violations of clearly established law. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("It is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." (emphasis in original)). It is clear that the plaintiffs have alleged sufficient facts against Valles on all claims. But because he was the only official responsible for procuring the search warrant (although Marquez appears to have been minimally involved with this process), the other defendants cannot be liable for executing the search because they were entitled to rely on the fact that a search warrant had issued. *See United States v. Richie*, 35 F.3d 1477, 1488 (10th Cir. 1994). Nevertheless, the Stoneciphers have alleged that the other ATF officers were present when Mr. Stonecipher read aloud the letter from his attorney, which he maintains should have notified the defendants that they lacked probable cause to continue with the search and arrest. *See infra* at 18. Thus, based on the Stoneciphers' allegations, only Valles can be liable for actions taken in connection with procuring the search warrant and authorizing the search, and the other defendants can be liable only for actions taken after Mr. Stonecipher read aloud the letter from his attorney.

-12-

argument is based on their contention that Valles knew, or should have known, that a suspended imposition of sentence was not a "conviction" for purposes of § 922(g)(9).

The district court held that Valles did not act in reckless disregard for the truth. The court found the state and federal documents Valles reviewed did not give a strong indication that Mr. Stonecipher was not "convicted" for purposes of § 922(g)(9), and Valles's conclusion was further mitigated by the fact an AUSA independently reviewed the materials. We agree with the district court.

The materials Valles reviewed indicated that Mr. Stonecipher pleaded guilty to a crime of misdemeanor domestic violence. To a non-legally trained officer, this fact demonstrates that Mr. Stonecipher was "convicted" under the term's ordinary meaning. *See Webster's New International Dictionary* (3d ed. 2002) (defining conviction as "the act of proving, finding, or adjudging a person guilty of an offense or crime"). Thus, in the ordinary case, the fact of conviction would suffice to establish a probable violation of § 922(g)(9).

But the Stoneciphers argue this is not the ordinary case. An ATF regulation prescribes a different definition of "convicted" for purposes of § 922(g)(9).[4] This regulation incorporates the definition of conviction of the state

_____

[4] The regulation is codified at 27 C.F.R. § 478.11. It provides, "A person shall not be considered to have been convicted of such an offense for purposes of this part unless . . . [t]he person is considered to have been convicted by the jurisdiction in which the proceedings were held." It also states, "A person shall
(continued...)

-13-

in which the conviction occurred, and it provides that convictions that are expunged do not qualify as convictions for purposes of § 922(g)(9). The Stoneciphers argue Valles acted in reckless disregard for the truth by failing to understand how the ATF regulation qualifies the statute's applicability to Missouri domestic violence convictions.

We do not agree the regulation establishes Valles's conduct was objectively unreasonable. It is true that officers will attain as a part of their jobs and training some legal understanding of the nuances and effects of punishments imposed in various states, especially their home state. But to require a non-legally trained officer to know the precise ins-and-outs of regulatory provisions and discrete aspects of every state's criminal procedure would defeat one of the purposes of qualified immunity, which is to prevent the threat of personal liability from inhibiting officers in the exercise of their duties. *See Messerschmidt*, 132 S. Ct. at 1244 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." (internal quotation marks omitted)).

This is not to say that officers are relieved from the responsibility of understanding the laws they are charged with enforcing. Where the law is technical and obscure, seeking the advice of a legally trained individual may be

---

[4](...continued)
not be considered to have been convicted of such an offense for purposes of this part if the conviction has been expunged or set aside . . . ."

-14-

required. But in this case, the nuances of Missouri law in combination with the facts and federal law were not so obvious that Valles acted recklessly in failing to recognize their operation. To the contrary, Valles proceeded reasonably by securing the legal opinion of the AUSA when the law was unclear to him.

The Stoneciphers argue that several aspects of the materials Valles reviewed should have put him on further notice that Mr. Stonecipher was not convicted for purposes of § 922(g)(9). First, the Missouri state court documents indicate Mr. Stonecipher received a suspended imposition of sentence. Second, in a summary portion of the NICS and NCIC reports, it is indicated that Mr. Stonecipher has "0" convictions. Supp. App. 184, 187. Third, at the end of the reports, there is a paragraph that includes the sentence: "Suspended imposition of sentence dispositions are not convictions and are closed record when probation is completed or finally terminated." *Id.* at 184, 188. Fourth, the NICS report indicated that Mr. Stonecipher's denial status (with regards to ability to purchase firearms) was "overturned." *Id.* at 178.

Our review of the materials leads us to conclude that the legal significance of these statements was not so obvious that Valles's failure to recognize their significance amounts to reckless disregard for the truth. As to the Missouri state court documents, the documents disclose Mr. Stonecipher pleaded guilty to an offense of misdemeanor domestic violence. Although the documents showed Mr. Stonecipher received a suspended imposition of sentence and that his probation

-15-

was completed, the documents did not reveal the legal significance of these facts. To a non-legally trained officer, it is reasonable to assume that a conviction and sentence are two separate things and that the latter does not qualify the former in ordinary circumstances.

Likewise, the NICS and NCIC reports contained conflicting information. The NICS report stated, "Subject has been *convicted* of a Misdemeanor Crime of Domestic Violence." *Id.* at 178 (emphasis added). It also stated, "Date of Conviction: 1/26/2007." *Id.* Although the summary portions expressed "0" convictions and one report noted Mr. Stonecipher's denial status was overturned, we cannot say it was objectively unreasonable for Valles to credit the unambiguous statement that Mr. Stonecipher was "convicted" of a misdemeanor crime of domestic violence.

Nor does the statement in the reports—noting that suspended impositions of sentences are not convictions—defeat qualified immunity. First, the sentence is buried in disclaimer-like language at the end of the reports and is qualified by the requirement that the reader understand state law probation requirements. Second, the reports show the court action as "Guilty - SIS" without spelling out that an SIS is a suspended imposition of sentence. Valles's failure to cross-reference the information from the state-court documents with the disclaimer-like language at the end of the reports, while perhaps negligent, is not objectively unreasonable based on the amount of confusing information contained in the materials.

-16-

In sum, the amount of conflicting information in the documents reviewed by Valles indicates that Valles may have been, at most, negligent in the course of his investigation. But his effort to secure the second opinion of AUSA Jennings further undercuts any notion that Valles acted recklessly. The Supreme Court's holding in *Messerschmidt* is instructive. In that case, the Court found it important to the objective reasonableness inquiry that the investigating officer sought the advice of a superior officer and the local deputy district attorney in determining whether the scope of the warrant was supported by probable cause. 132 S. Ct. at 1249–50. Acknowledging that review by another member of the prosecution team cannot be *dispositive* as to whether the officer acted reasonably, the court nonetheless considered it *relevant* to the officer's objective reasonableness. *Id.* The Court held that the officer's probable cause determination was objectively reasonable and noted that "a contrary conclusion would mean not only that Messerschmidt and [his superior officer] were 'plainly incompetent,' but that their supervisor, the deputy district attorney, and the magistrate were as well." *Id.* at 1249 (internal citation omitted).

Here, Valles did not simply tell Jennings that Mr. Stonecipher had a conviction on his record; he provided Jennings with all of the materials he used to reach that conclusion. Indeed, the potential for a technical, legal mistake in the probable cause determination is precisely why Valles would seek out a legal expert. Valles did not act in reckless disregard for the truth when he not only

-17-

sought legal advice from an AUSA, but also provided the AUSA with all the materials he used to make his assessment.[5]

Based on the totality of the circumstances, Valles proceeded in an objectively reasonable manner based on arguable probable cause. The district court correctly granted summary judgment in his favor on qualified immunity grounds with respect to the claims for unlawful search and entry.[6]

### 3. *Unlawful Seizure and Arrest*

The Stoneciphers also argue that, even if there was arguable probable cause to initiate the search and arrest, probable cause evaporated during the course of the search. In particular, they contend a reasonable officer would not believe he had probable cause after Mr. Stonecipher presented the officers with the letter

---

[5] The Stoneciphers contend that Valles cherry-picked information from the reports in compiling his warrant application and supporting affidavit. Specifically, Valles mentioned in his supporting affidavit that the NICS report indicated Mr. Stonecipher was denied the right to purchase a firearm on the basis of his previous conviction without mentioning the NICS report also noted the denial status was "overturned." As we have described, this report contained conflicting information, and Valles (after consulting with Jennings) made an objectively reasonable conclusion that Mr. Stonecipher was "convicted" for purposes of § 922(g)(9). There is nothing in the application to suggest that Valles deliberately or recklessly presented false information or omitted exculpatory information. This is all the more true because, from the perspective of the reasonable officer, it is not necessarily the case that overturning an individual's denial status means a previous conviction was also overturned.

[6] The Stoneciphers also argue that the defendants exceeded the scope of their warrant when executing the search. But, because they do not develop this argument in their opening brief, the claim is considered waived. *See Utah Lighthouse Ministry*, 527 F.3d at 1049 n.1.

-18-

from his Missouri attorney indicating that, if he completed his probation, he would not have a conviction on his record.

The district court correctly held that the defendants were not required to forego arresting Mr. Stonecipher under these circumstances. Officers executing a search warrant are not required to credit a suspect's explanation if the officers reasonably believe they still have probable cause to make the arrest despite the explanation. *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995) ("A policeman . . . is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." (quoting *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988))).

The defendants were entitled to continue the arrest without conducting further investigation into Mr. Stonecipher's explanation at that time. Mr. Stonecipher's explanation of the status of his prior offense, and supporting documentation, could have plausibly defeated probable cause, but the explanation was by no means conclusive. In addition, there was no way to verify the authenticity of the letter, or reconfirm that Mr. Stonecipher had in fact completed probation as required, or ascertain its legal implications under Missouri law for § 922(g)(9) purposes. In fact, subsequent to Mr. Stonecipher's arrest, Valles did what a reasonable officer would do with new information—he shared it with the AUSA he had consulted before.

In sum, the district court was correct to grant summary judgment for the defendants on Mr. Stonecipher's claim for unlawful seizure and arrest.

### 4. Malicious Prosecution

The Stoneciphers next argue that Valles committed the tort of malicious prosecution by filing a criminal complaint against Mr. Stonecipher without conducting a reasonable investigation into his guilt. He argues that the information in the materials reviewed by Valles, as well as the letter from Mr. Stonecipher's Missouri attorney, should have alerted Valles that further investigation into the legal significance of Mr. Stonecipher's prior crime was necessary.

A malicious prosecution claim brought under the Fourth Amendment requires a showing that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).[7] Malice may be inferred if a defendant causes the prosecution without

---

[7] We noted in *Wilkins* that a malicious prosecution claim based on the deprivation of a constitutional right need not always rest on the Fourth Amendment right to be free from unreasonable searches or seizures. 528 F.3d at 797. But the Stoneciphers allege that Valles committed the tort of malicious prosecution because he filed a criminal complaint without arguable probable cause. We will therefore analyze the claim in light of Fourth Amendment

(continued...)

-20-

arguable probable cause. *See id.* at 800–01 (malice may be inferred from intentional or reckless behavior).

As discussed above, Valles acted in an objectively reasonable manner when he reviewed the materials and sought Jennings's legal advice as to whether Mr. Stonecipher was guilty of violating § 922(g)(9). But after Mr. Stonecipher's arrest, Valles had in his possession the letter from Mr. Stonecipher's attorney that explained Mr. Stonecipher would no longer have a conviction on his record after completing probation. Valles informed Jennings of this new information, but Jennings still agreed that Mr. Stonecipher could be liable under § 922(g)(9).

The Stoneciphers' argument still assumes that the failure to understand the legal significance of a successful probation and the removal of a conviction from one's state criminal record—under § 922(g)(9) and ATF regulations—amounts to recklessness. We have already concluded that the failure to perform a correct legal analysis after examining materials with conflicting information does not show reckless disregard for the truth. And Valles cannot have acted in reckless disregard of the information found in the letter from Mr. Stonecipher's attorney when he informed Jennings of this new information and obtained Jennings's approval to proceed before filing the criminal complaint.

---

[7](...continued)
guarantees.

Of course, the fact that a government lawyer makes the final decision to prosecute does not automatically immunize an officer from liability for malicious prosecution. The Stoneciphers point to *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), where we held that the prosecutor's decision to indict and prosecute the plaintiff did not shield a forensic analyst, who flagrantly misrepresented evidence to the prosecutor, from liability for malicious prosecution. We noted that defendants "cannot hide behind the officials whom they have defrauded." *Id.* at 1292 (emphasis omitted) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988)). But, in this case, Valles did not misrepresent any information to Jennings. To the contrary, Valles provided Jennings with all of the original materials he reviewed to analyze whether Mr. Stonecipher was guilty of violating § 922(g)(9) and informed Jennings about the letter from Mr. Stonecipher's Missouri attorney. Seeking an independent opinion from a legally trained official, while not dispositive on the issue, shows that Valles acted in an objectively reasonable manner under the totality of the circumstances in this particular case.

Because Valles did not act in reckless disregard for the truth, the Stoneciphers cannot demonstrate that Valles lacked arguable probable cause. They offer no other basis from which one can infer Valles acted with malice in filing the criminal complaint. The district court was correct in granting summary judgment for Valles on the malicious prosecution claim.

### B. First Amendment Claims

The Stoneciphers also argue that the defendants arrested and prosecuted Mr. Stonecipher in retaliation for exercising his First Amendment rights. He contends the officers held against him his protestations of innocence and his assertion of his Second Amendment rights at the time of his arrest. In particular, Mr. Stonecipher alleges that these protestations were the true reason the defendants initiated the prosecution.[8]

To make a First Amendment retaliation claim, "a plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic*, 582 F.3d 1155, 1165 (10th Cir. 2009).

The district court held that since Mr. Stonecipher's arrest preceded any potentially protected speech, the defendants could not have made the arrest in retaliation for the protected speech. We agree. The record is clear that the statements occurred after Mr. Stonecipher had been arrested and read his Miranda rights.

---

[8] The Stoneciphers do not argue that the district court was incorrect to grant summary judgment for the defendants as to their claim that the defendants retaliated against Mrs. Stonecipher for her speech.

But the Stoneciphers also alleged that Valles subsequently filed the criminal complaint against Mr. Stonecipher in retaliation for his protected speech. The district court resolved this claim by holding Valles could not be liable for Jennings's decision to prosecute. Valles did, however, file the criminal complaint. For purposes here, we assume the filing of a criminal complaint— even if approved by the prosecutor—may "chill a person of ordinary firmness," establishing the second element of a retaliation claim.

Mr. Stonecipher, however, cannot meet his burden to show that the filing of the complaint was "substantially motivated" (or even motivated at all) by the protected speech. At the summary judgment stage, "some facts must demonstrate the defendants acted on the basis of a culpable subjective state of mind." *Trant v. Oklahoma*, No. 13-6009, 2014 WL 2199365, at \*8 (10th Cir. May 28, 2014) (internal quotation marks omitted). The only evidence the Stoneciphers offer is that Valles submitted the complaint without probable cause. But, as we have already explained, Valles possessed arguable probable cause to arrest and file charges. The Stoneciphers have thus not met their burden of pointing to some facts that demonstrate Valles was "substantially motivated" to submit the complaint because of Mr. Stonecipher's attempts to explain his innocence and assert his Second Amendment rights. Indeed, the filing of the complaint was the next logical step in the ATF's pursuit of charges against Mr. Stonecipher, which

began months before Mr. Stonecipher made his statements. The Stoneciphers do not explain how Mr. Stonecipher's speech affected this course of events.

We affirm the grant of summary judgment for the defendants on the Stoneciphers' First Amendment retaliation claims.

## C. Discovery

The Stoneciphers make one last procedural argument. They contend the district court abused its discretion when they were denied the opportunity for additional discovery before it granted the defendants' motions for summary judgment.[9]

But because qualified immunity protects against the burdens of discovery as well as trial, a district court may stay discovery upon the filing of a dispositive motion based on qualified immunity. *See Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) ("[E]ven such pretrial matters as discovery are to be avoided if possible, as inquiries of this kind can be peculiarly disruptive of

---

[9] The Stoneciphers also argue that the denial of the defendants' motion to dismiss on qualified immunity grounds precluded the court from granting the defendants qualified immunity at the summary judgment stage. But the denial of qualified immunity protection at the motion to dismiss stage does not bind the court at the summary judgment stage. The legally relevant factors for a qualified immunity decision will be different at the summary judgment stage—no longer can the plaintiffs rest on facts as alleged in the pleadings. *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see also Robbins v. Wilkie*, 433 F.3d 755, 762 (10th Cir. 2006) ("[A] defendant should be permitted to raise the qualified immunity defense at successive stages of litigation because different legal factors are relevant at various stages."), *rev'd on other grounds* 551 U.S. 537 (2007). The district court did not err in reevaluating whether the defendants were entitled to qualified immunity protection at the summary judgment stage.

-25-

effective government." (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985))). The court may grant pre-discovery summary judgment on the basis of qualified immunity if the plaintiffs cannot explain "how discovery will enable them to rebut a defendant's showing of objective reasonableness." *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988). If, however, the district court determines it cannot rule on the immunity defense without clarifying the relevant facts, the court "may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (internal quotation marks omitted).

The district court concluded, and we agree, that Valles possessed arguable probable cause for the arrest and charging decision. The Stoneciphers do not explain how discovery would enable them to rebut this showing. In their reply brief, the Stoneciphers mention that discovery would allow them to obtain the complete correspondence between Valles and Jennings, but they do not explain how this material would rebut the finding of arguable probable cause.[10] Both Valles and Jennings averred that Jennings independently reviewed Mr. Stonecipher's file. Because the Stoneciphers do not explain how discovery will allow them to rebut the finding of objective reasonableness, the district court did

---

[10] The Stoneciphers also assert the district court erred by failing to review their affidavits, but this contention is directly contradicted by the district court's opinion, which explicitly refers to their affidavits.

not err in granting summary judgment for the defendants without allowing for discovery.

## III.  Conclusion

Because the defendants are entitled to qualified immunity, the judgment of the district court is AFFIRMED.