**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 23, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHRISTOPHER CLEVELAND,

Plaintiff - Appellant,

v.

TERRY MARTIN, Warden; MAURICE
WARRIOR, Deputy Warden; GLENN
WALDON, Unit Manager; JUSTIN
JONES, Director, Oklahoma Department
of Corrections; JACLYN RIVERA,
Assistant District Attorney; MARK
KNUTSON, Administrative Review
Manager, Oklahoma Department of
Corrections;

Defendants - Appellees.

No. 14-5060
(N.D. Oklahoma)
(D.C. No. 4:13-CV-00375-TCK-PJC)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **ANDERSON**, and **BACHARACH**, Circuit Judges.

---

Mr. Christopher Cleveland, who is an Oklahoma inmate, sued prison

officials and an assistant district attorney under 43 U.S.C. § 1983. The claims

---

[*]    Oral argument would not significantly aid in the decision. Thus, the Court
will decide the appeal based on the briefs. *See* Fed. R. App. P. 34(a)(2).

This order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel. 10th
Cir. R. 32.1(A). But the order and judgment can be cited for its persuasive value.

involve Mr. Cleveland's prior incarceration at the Dick Conner Correctional Center. While there, Mr. Cleveland was allegedly denied visitation with his minor children. Upset with the inability to see his children, Mr. Cleveland sued prison officials and the assistant district attorney in their official and individual capacities, seeking monetary damages, an injunction, and a declaratory judgment. The district court granted the defendants' motion for summary judgment, and Mr. Cleveland appeals. During the pendency of this appeal, Mr. Cleveland was transferred to the Jess Dunn Correctional Center.

This appeal involves issues of mootness, Eleventh Amendment immunity, qualified immunity, and judicial notice.

- *Mootness*. Federal subject-matter jurisdiction can be lost through mootness by changes in prison conditions while an appeal is pending. Mr. Cleveland seeks injunctive and declaratory relief to remedy limitations on visitation while he was at Dick Conner. But he has been transferred to another prison. Thus, we must ask: Did the transfer moot the claims involving restrictions on visitation? We conclude that the claims for injunctive and declaratory relief are moot. With the transfer, a federal court could no longer improve Mr. Cleveland's visitation rights at Dick Conner through an injunction or declaratory judgment.

- *Eleventh Amendment Immunity*. Mr. Cleveland seeks not only injunctive and declaratory relief, but also money damages. The request for monetary relief implicates the Eleventh Amendment of the United States Constitution, which precludes a citizen from suing a state in federal court. Though Mr. Cleveland has not expressly sued the State of Oklahoma, he has effectively done so by suing state officials in their official capacities for money damages. In these circumstances, we must ask: Are the official-capacity claims for money damages precluded under the Eleventh Amendment? We conclude they are. The official-capacity claims for monetary damages are the equivalent of a claim against the state, which triggers Eleventh Amendment immunity.

2

- *Qualified Immunity*. These decisions would leave individual-capacity claims for money damages. On these claims, the prison officials and assistant district attorney enjoy qualified immunity. With this immunity, the prison officials and assistant district attorney could incur individual liability only if they violate clearly established statutory or constitutional rights.

  Mr. Cleveland alleges constitutional rights to familial association and procedural due process. The right to familial association is balanced against officials' interest in managing prisons, and procedural due process is required only if Mr. Cleveland had a protected liberty interest in visitation. Neither our court nor the Supreme Court has recognized a liberty interest in visitation or found infringement of the right to familial association based on limited restrictions in visitation. In the absence of such recognition by our court or the Supreme Court, we must ask: Do the alleged visitation restrictions infringe on a clearly established constitutional right to familial association or procedural due process? We conclude they do not in the absence of supporting precedent.

- *Judicial Notice*. The district court took judicial notice of state-court findings in addressing the defendants' motion for summary judgment. Mr. Cleveland challenges the taking of judicial notice. But we must ask: Was the taking of judicial notice harmless even if it constituted error? We conclude that judicial notice was harmless because the information had no material bearing on issues involving summary judgment.

With these conclusions, we affirm.

## I.    Mootness

Because Mr. Cleveland was transferred to a different facility pending this appeal, a potential issue arises regarding whether an injunction or declaratory judgment could provide a meaningful remedy. We must address this issue, though not raised by the parties, because mootness is jurisdictional. *Tandy v. City of Wichita*, 380 F.3d 1277, 1290 n.15 (10th Cir. 2004). In addressing this issue, we conclude that the claims for injunctive and declaratory relief became

moot when Mr. Cleveland was transferred. With that transfer, an injunction or declaratory judgment would no longer provide any real-world effect.

Article III of the Constitution restricts the power of federal courts to hear only "cases" and "controversies." No case or controversy exists "'when . . . the parties lack a legally cognizable interest in the outcome.'" *Chafin v. Chafin*, __ U.S. __, 133 S. Ct. 1017, 1023 (2013) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. __, __, 133 S. Ct. 721, 726 (2013)). Thus, a case becomes moot when the court can no longer grant an effectual remedy. *Id.*

The claims involve conditions at the Dick Conner Correctional Center, and Mr. Cleveland is no longer there. In Oklahoma prisons, visitation policies vary from facility to facility. Though Mr. Cleveland complains of visitation limitations at Dick Conner, he does not address his visitation rights at the current prison (Jess Dunn).

Thus, the claims for injunctive and declaratory relief are moot with respect to the three defendants employed by the Dick Conner Correctional Center (Martin, Warrior, and Waldon). For them, an injunction or declaratory judgment would lack any real-world effect. *See id.* at 1029 (holding that a prisoner's claims are moot because the court could not provide any prospective relief "that would have any effect in the real world"). Because Mr. Cleveland is no longer incarcerated at the Dick Conner Correctional Center, he is beyond the reach of Defendants Martin, Warrior, and Waldon. Thus, an injunction against them would not improve Mr. Cleveland's present circumstances.

4

Likewise, a declaratory judgment would serve only to retrospectively vindicate Mr. Cleveland's belief that he was wronged. That is not enough to confer jurisdiction. *See Jordan*, 654 F.3d at 1024-25 (10th Cir. 2011) (noting that in an action for declaratory relief, a plaintiff must "[seek] more than a retrospective opinion that he was wrongly harmed by the defendant").

## II.      Eleventh Amendment Immunity

The defendants also invoke Eleventh Amendment immunity. Under this amendment, a state is entitled to immunity unless it has been abrogated by Congress or waived by the state. *Edelman v. Jordan*, 415 U.S. 651, 662-63, 672 (1974). The immunity applies not only to suits against states, but also to damage suits brought against state officials in their official capacities. *Ellis v Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998).

Congress has not abrogated Eleventh Amendment immunity by enacting § 1983, and Oklahoma has not waived this immunity. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (no abrogation by Congress); Okla. Stat. tit. 51 § 152.1(B) (no waiver by Oklahoma). Because the defendants are employees of the Oklahoma Department of Corrections and the Oklahoma County District Attorney's Office, the Eleventh Amendment applies to the official-capacity claims for damages. *See Eastwood Dep't of Corr. of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988);[1] *see also Laidley v. McClain*, 914 F.2d 1386, 1392 (10th Cir.

---

[1]      A potential issue exists regarding the remedy. We have held that the Eleventh Amendment bears some attributes of subject-matter jurisdiction, and jurisdictional

1990) (stating that under Oklahoma law, the district attorney is an arm of the state).

## III.    The Individual-Capacity Claims

On the individual capacity claims, the district court properly granted summary judgment to the defendants based on qualified immunity.

### A.    Standard of Review

We review de novo the district court's grant of summary judgment based on qualified immunity. *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). In conducting de novo review, we view the evidence in the light most favorable to Mr. Cleveland. *Tolan v. Cotton*, __ U.S. __, 134 S. Ct. 1861, 1866 (2014). Assessing that evidence against the backdrop of clearly established legal rules, we consider whether the conduct was objectively reasonable in light of existing precedents. *Stonecipher*, 759 F.3d at 1141. Qualified immunity is defeated only if these precedents would "have placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, __ U.S. __, 131 S. Ct. 2074, 2083 (2011).

---

defects should generally result in dismissal without prejudice rather than summary judgment. *See United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 941 (10th Cir. 2008) (stating that the Eleventh Amendment has its own "unique identity," containing some "traits . . . akin to subject-matter jurisdiction"); *see also Martinez v. Richardson*, 472 F.2d 1121, 1126 (10th Cir. 1973) ("It is fundamental, of course, that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal of [plaintiff's] claim must be without prejudice."). But Mr. Cleveland has not challenged the remedy for Eleventh Amendment immunity.

**B.      First Amendment Claim**

According to Mr. Cleveland, the limitations on visitation ran afoul of his First Amendment right to familial association.

When analyzing an alleged violation of a prisoner's constitutional rights, we apply the standard clearly established in *Turner v. Safley*, 482 U.S. 78, 89 (1987): "a prison regulation imping[ing] on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *See Boles v. Neet*, 486 F.3d 1177, 1184 (10th Cir. 2007) (stating that the Supreme Court clearly established the constitutional standard in *Turner*). We accord substantial deference "to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003). Though the *Turner* reasonableness standard is deferential, it "is not toothless." *Gee v. Pacheco*, 627 F.3d 1178, 1188-89 (10th Cir. 2010) (internal quotations omitted). Four factors guide the court's inquiry:

(1)      whether a rational connection exists between the prison regulation and a legitimate governmental interest;

(2)      whether alternative means of exercising the right are available notwithstanding the regulation;

(3)      what effect accommodation would have on guards, other prisoners, and prison resources; and

(4)      whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

7

*Wirsching v. Colorado*, 360 F.3d 1191, 1199 (10th Cir. 2004).

On the first factor, the district court found a rational connection between the visitation restriction and legitimate penological interests in maintaining prison security and protecting the minor children. In support of that ruling, the defendants point to safety risks from Mr. Cleveland's conviction on child abuse charges and the possibility that unsupervised visitation might spark a confrontation.

Mr. Cleveland argues the visitation restriction was unreasonable because

(1)     he had visited his children without incident several times before the restriction went into effect,

(2)     the children wanted to visit him,

(3)     the visitation policy was underinclusive of its stated aims,

(4)     the visits were closely monitored, and

(5)     prison officials erroneously treated a letter by Jaclyn Rivera as a binding court order.

In assessing the rationality of the visitation restrictions, we place the burden on Mr. Cleveland. *See Wirsching v. Colorado*, 360 F.3d 1191, 1200 (10th Cir. 2004).

Neither our court nor the Supreme Court has ever invalidated similar limitations on visitation based on the denial of familial association. Though a fact-finder could reasonably infer a substantial hardship on Mr. Cleveland, our precedents prevent us from treating the visitation limitations as a clearly

established violation of the First Amendment. Therefore, we conclude the defendants are entitled to qualified immunity on the First Amendment claim.

## C. Procedural Due Process

Mr. Cleveland also claims the visitation restriction violated his right to procedural due process under the Fourteenth Amendment. The threshold question is whether Mr. Cleveland had a protected "liberty interest" in visitation. *Doyle v. Okla. Bar. Ass'n*, 998 F.2d 1559, 1569 (10th Cir. 1993). In the absence of a liberty interest, he is not entitled to the safeguards of due process. *See Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1998) (recognizing that a due process claim cannot be maintained absent a protected liberty interest).

The Supreme Court has limited the scope of liberty interests to conditions involving an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Since *Sandin*, we have consistently stated in unpublished opinions that inmates lack a liberty interest in visitation. *See, e.g.*, *Marshall v. Morton*, 421 Fed. Appx. 832, 838 (10th Cir. Apr. 26, 2011) (unpublished). With these unpublished decisions, we cannot find a clearly established liberty interest. And without such an interest, the defendants are entitled to qualified immunity on the procedural due process claim.

## D. Fifth Amendment

In addition to his First and Fourteenth Amendment claims, Mr. Cleveland alleges a Fifth Amendment violation in his complaint. But, we are unable (even

9

with liberal construction) to discern the nature of this claim.  Therefore, we reject the Fifth Amendment claim as a matter of law.

### E.     Cruel and Unusual Punishment

Mr. Cleveland also invokes the Eighth Amendment, characterizing the denial of visitation as "cruel and unusual punishment."  To prove an Eighth Amendment violation, Mr. Cleveland must show that the prison conditions are so serious that they deny basic life necessities.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Visitation with the minor children does not involve one of life's necessities; thus, the limitations do not constitute cruel and unusual punishment. *See Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003); *Wirsching v. Colorado*, 360 F.3d 1191, 1205 (10th Cir. 2004).  In these circumstances, we conclude that the defendants enjoy qualified immunity on the Eighth Amendment claim.

## IV.    Judicial Notice of Related State-Court Claims

Mr. Cleveland claims the district court improperly took judicial notice of factual findings from state court proceedings in *In re H.T.*, 276 P.3d 1054 (Okla. Civ. App. 2012).  We need not resolve this claim because the outcome would have been the same even without judicial notice.

The district court referred to a state appellate decision involving Mr. Cleveland (*In re H.T.*, 276 P.3d 1054 (Okla. Civ. App. 2012)), noting that it "provide[d] important factual background."  Opinion and Order, *Cleveland v. Martin*, No. 13-CV-375-TCK-PJC, 2014 WL 1572433, at *4, (N.D. Okla. Apr. 18, 2014).  The district court then recounted the state appellate court's factual

10

findings as to Mr. Cleveland's failings as a parent. *Id.* at \*5. Some parts of the cited decision involved factual issues that Mr. Cleveland arguably had no way of knowing that he would need to address.

But we need not decide whether the taking of judicial notice involved error. If it did, the error would have been harmless. *See* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for . . . vacating, modifying, or otherwise disturbing a judgment or order.").

The test for harmless error is whether the district court would have reached the same decision had it not erred. *See Neder v. United States*, 527 U.S. 1, 15 (1999). Without the factual findings from the state appellate court opinion, the district court should have come to the same conclusion based on the highly deferential standard in *Turner* and the ample evidence supporting the reasonableness of the prison officials' determination. Accordingly, the alleged error in judicial notice would have been harmless.

## V. Conclusion

We affirm.

Entered for the Court


Robert E. Bacharach
Circuit Judge

11