**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 15, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JEFFERY WAYNE METZLER,

    Plaintiff - Appellant,

v.

CITY OF COLORADO SPRINGS, a
municipality; ELIZABETH REID, in her
individual capacity; JOHN
CHADBOURNE, in his individual
capacity; CRAIG SIMPSON, in his
individual capacity; KEVIN CLARK, in
his individual capacity,

    Defendants - Appellees.

No. 20-1079
(D.C. No. 1:19-CV-00878-RM-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **KELLY**, and **EID**, Circuit Judges.
_____

Jeffery Wayne Metzler appeals the district court's order dismissing his suit

under 42 U.S.C. § 1983 that asserts claims against the individual defendants for

unlawful arrest and malicious prosecution and against the City of Colorado Springs

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2): 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

(the City) under a theory of municipal liability. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Because we are reviewing the dismissal of Mr. Metzler's amended complaint for failure to state a claim, we assume the truth of the well-pleaded factual allegations in that pleading. *See Wittner v. Banner Health*, 720 F.3d 770, 774-75 (10th Cir. 2013). The allegations paint a picture of an incompetent police investigation leading to the arrest and two-day incarceration of an innocent man.

The events giving rise to Mr. Metzler's suit began in August 2017. Law-enforcement personnel from the Colorado Springs Police Department (CSPD) and investigators from the Department of Homeland Security Investigations were conducting a joint sting operation to identify and arrest individuals seeking to purchase sex with underage girls.

"As part of the operation, [Defendant CSPD] Detective Elisabeth Reid placed multiple ads for prostitution services on . . . a . . . website known for advertising prostitution services disguised as personal ads." Aplt. App. at 36. When a potential customer called, Detective Reid would pose as "Lizzie" and attempt to arrange for the customer to have sex with her fictional 16-year-old sister. "If the customer agreed . . ., Detective Reid would [meet him at a hotel]," confirm he was there to have sex with a juvenile girl and had money, and then give him "a room key and condom." *Id.* at 37. "A team of other CSPD officers would surveil and cover Detective Reid during th[e] transaction. When the customer arrived at the hotel

2

room, a second team of uniformed officers would be waiting there to arrest him." *Id.* Defendant CSPD Detective John Chadbourne participated.

"On August 9 . . . a man who identified himself as 'Rick' called the phone number listed in Detective Reid's [ad]. . . . After a brief conversation with 'Lizzie,' Rick agreed to pay for sex with Lizzie's 16-year-old sister." *Id.* Later that day, Detective Reid (posing as "Lizzie") met Rick in the hotel parking lot. After speaking with Rick and confirming that he had money, Detective Reid gave him a condom and room key, and then directed him to where he could find her sister. "Rick started walking up a flight of stairs toward the room. . . . However, . . . Rick stopped at a landing, turned around, and walked back down the stairs into the hotel complex." *Id.* at 38. "After a brief search, the CSPD personnel gave up on finding Rick." *Id.* at 39.

"[CSPD] Sergeant [Craig] Simpson [who was voluntarily dismissed as a defendant] . . . instructed Defendant CSPD Analyst Kevin Clark to attempt to identify 'Rick' based on the phone number that had been used to contact Detective Reid." *Id.* Analyst Clark's "search of a law enforcement database yielded that the phone number . . . [was] listed to a Jeffrey Wayne Metzler." *Id.* at 103. "CSPD personnel . . . [then] pulled Mr. Metzler's driver's license information and accessed his personal Facebook page to forward several photos of Mr. Metzler to the officers who had been on scene at the [hotel]." *Id.* at 40. Detective Reid determined that Mr. Metzler's driver's license photo "matched" the individual Rick, and on August 30 she sought a warrant for his arrest. *Id.* at 103. But the phone number in the law-enforcement database was outdated; it belonged to an employer-provided cell phone that

3

Mr. Metzler had turned in when he left his employment and had not used in several years.

After the arrest warrant had issued, CSPD Officer Drew Jeltes called the phone number associated with Mr. Metzler to ask him to turn himself in. "A man answered, and Officer Jeltes inquired as to whether he was Jeffrey Metzler; the man stated that he was not. When Officer Jeltes identified himself as a police officer and asked if the man could provide contact information for Mr. Metzler, the man ended the call." *Id.* at 43. "Later that day, Officer Jeltes and Detective Chadbourne went to Mr. Metzler's house in Colorado Springs. They were unable to contact Mr. Metzler or anyone else at his house, and instead began to interview his neighbors." *Id.* One of the neighbors gave him Mr. Metzler's cell-phone number, which was different from the one used by Rick to contact Detective Reid. The officers did not ask the neighbors to confirm that Mr. Metzler looked like pictures taken of Rick or owned a truck like the one Rick drove.

"Officer Jeltes called the number provided by the neighbor, and Mr. Metzler answered the phone and immediately identified himself." *Id.* at 44. Officer Jeltes told Mr. Metzler that there was a warrant for his arrest related to an incident on August 9 at a local hotel. "Officer Jeltes reported that Mr. Metzler sounded 'puzzled' and said that he was not familiar with the location of the alleged crime." *Id.*

CSPD Officer Matthew Peterson was the watch commander on duty when Mr. Metzler surrendered himself. He called Detective Reid to tell her Mr. Metzler had turned himself in but did not want to be interviewed by a detective. Reid

4

nevertheless went to the police station. While there she asked Peterson to review video of the August 9 incident and still shots of the suspect from the video. Peterson reported that "[t]he [man] in the video and photographs had similar characteristics to that of [Mr.] Metzler and the voice sounded similar." *Id.* at 42 (internal quotation marks omitted). Mr. Metzler spent two days in jail before bonding out.

As the investigation continued, evidence emerged, including information obtained through a search warrant for historical information for Rick's phone and interviews with former and current employers and co-workers, that called into question Reid's initial identification of Rick as Mr. Metzler. Ultimately, the district attorney filed a motion to dismiss, which recited that "[w]hile probable cause existed at the time of [Mr. Metzler's] arrest and at [the] time of filing of charges, the District Attorney . . . moves to dismiss all counts against . . . [Mr.] Metzler . . . without prejudice. The People are unable to prove this case beyond a reasonable doubt at this time." *Id.* at 107.

Mr. Metzler then filed this suit in which he alleged that "[t]hrough a combination of failures on the part of Defendants[,] . . . CSPD . . . misidentified Rick as Mr. Metzler," and "then misrepresented evidence to a judge in order to acquire an arrest warrant." *Id.* at 34. He further alleged that the CSPD had a history of arresting suspects without probable cause and that the City's failure to implement necessary policies and properly train law-enforcement personnel led to his unlawful arrest.

The district court granted Defendants' motion to dismiss. Mr. Metzler appeals. As we proceed to explain, a botched police investigation, even one leading

5

to the arrest and confinement of an innocent man, does not necessarily violate the Constitution.

## II. STANDARD OF REVIEW

"This court reviews de novo a district court's grant of a motion to dismiss based on qualified immunity." *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010). We likewise review de novo a district court's grant of a motion to dismiss a claim for municipal liability. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015).

"To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

## III. ANALYSIS

### A. Qualified Immunity

"When a defendant raises the qualified-immunity defense, the plaintiff must . . . establish (1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established at the time of the defendant's conduct." *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020). "We may address the two prongs of the qualified-immunity analysis in either order: If the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant

6

prevails on the defense." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (brackets and internal quotation marks omitted).

### 1. *Unlawful Arrest*

An arrest must be based on probable cause. "Probable cause is not a precise quantum of evidence—it does not, for example, require the suspect's guilt to be more likely true than false. Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." *Stonecipher v. Valles,* 759 F.3d 1134, 1141 (10th Cir. 2014) (internal quotation marks omitted). Even when an affidavit for an arrest warrant states probable cause on its face (which is not disputed in this case), an arrest under the warrant may be unlawful. On occasion, errors in the affidavit may invalidate the warrant. An affiant seeking an arrest warrant violates the Fourth Amendment when she knowingly, or with reckless disregard for the truth, includes material false statements in a supporting affidavit or omits information that, if included, would prevent the warrant from lawfully issuing. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978); *Beard v. City of Northglenn*, 24 F.3d 110, 114 (10th Cir 1994).

"The burden is on the plaintiff to make a substantial showing of deliberate falsehood or reckless disregard for truth by the officer seeking the warrant." *Stonecipher*, 759 F.3d at 1142 (internal quotation marks omitted). Proof of "reckless disregard in the presentation of information to a . . . judge [requires] evidence that the officer in fact entertained serious doubts as to the truth of [her] allegations." *Id.* (internal quotation marks omitted). "The failure to investigate a matter fully, to

7

exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth. To the contrary, it is generally considered to betoken negligence at most." *Id.* (brackets and internal quotation marks omitted). "A reviewing judge may infer recklessness from circumstances evincing obvious reasons to doubt the veracity of the allegations . . . ; [b]ut this is not a mandatory or automatic inference." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 908 (10th Cir. 2020) (internal quotation marks omitted).

We can quickly dispose of the claims against Detective Chadbourne and Analyst Clark. "[I]n order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation of a constitutional right must be established." *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (internal quotation marks omitted). Such responsibility includes "set[ting] in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279-80 (10th Cir. 2008) (internal quotation marks omitted). The gist of the claim against Chadbourne appears to be only that if he had performed his job better, he would have discovered evidence of Mr. Metzler's innocence in time to prevent the arrest. But there is no allegation that he participated in the preparation of the affidavit for the arrest warrant or was otherwise directly personally responsible for the detention. As for Clark, he was the one who reported that Rick's phone number belonged to Mr. Metzler. The amended complaint,

8

however, gives us no reason to believe that Clark (who had no possible motive for misidentifying the owner of the cell-phone number) did not check the law-enforcement database, that he misread the database, or that he was anything more than merely negligent if he did misread the database. Therefore, the claims against Chadbourne and Clark were properly dismissed.

Turning to Detective Reid, Mr. Metzler failed to establish any deliberate falsehoods in her affidavit. To the contrary, Reid truthfully described the sting operation, her interaction with Rick, Analyst Clark's search of the law-enforcement database, and her identification of Mr. Metzler as Rick from his driver's license photo.

We also reject Mr. Metzler's further argument that Reid knowingly or recklessly omitted material facts in her affidavit—most notably that she had "doubts" about her identification of Mr. Metzler as Rick, Aplt. Opening Br. at 15, and "sought to arrest [him] not because she believed she had probable cause to believe he was Rick, but rather for the sole purpose of identification—to determine whether [he] was Rick," *id.* at 16-17 (internal quotation marks omitted). This contention is based on Detective Reid's actions following Mr. Metzler's arrest when she showed Officer Peterson the video of her encounter with Rick and still shots from the video so that he could confirm that Mr. Metzler was Rick.

To be sure, if the affiant for a warrant possesses information that would cast substantial doubt on the existence of probable cause, that information should not be intentionally withheld from the judge asked to approve the warrant. But Detective

9

Reid's affidavit discloses how she made the identification, so any weaknesses of the procedure were apparent to the judge. *See Neil v. Biggers*, 409 U.S. 188, 199–200 (1972) (setting forth factors to be considered in assessing accuracy of eyewitness identification of suspect). Here, Reid, by asking Peterson to look at the video, was performing the sort of double-check that Mr. Metzler (properly) contends should have been conducted throughout the investigation. We do not think that Reid's request to Peterson can support a reasonable inference that she had sufficient doubt about her identification to undermine the probable cause stated in her affidavit— particularly in light of the (now-known-to-be incorrect) attribution of Rick's phone number to Mr. Metzler.

Because there was no Fourth Amendment violation, Detective Reid was entitled to qualified immunity.

### 2. *Malicious Prosecution*

"We have repeatedly recognized in this circuit that, at least prior to trial, the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 must be the Fourth Amendment's right to be free from unreasonable seizures." *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) (internal quotation marks omitted). The seizure requirement is incorporated into a Fourth Amendment-based malicious-prosecution claim under § 1983, which includes the following elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution;

10

(4) the defendant acted with malice; and (5) the plaintiff sustained damages."

*Stonecipher*, 759 F.3d at 1146 (internal quotation marks omitted). As previously explained, there was probable cause to arrest Mr. Metzler, and therefore his malicious-prosecution claim necessarily failed.

## B. Municipal Liability

Mr. Metzler alleged that the City, as "policymaker" for the CSPD, Aplt. App. at 56, failed to implement policies or adequately train its law-enforcement officers to overcome a pattern of arresting suspects without probable cause, which in turn led to the violation of his constitutional rights. But "a municipality . . . may not be held liable where there was no underlying constitutional violation by any of its officers." *Donahue v. Wihongi*, 948 F.3d. 1177, 1199 (10th Cir. 2020) (internal quotation marks omitted). Because we conclude that there was no constitutional violation, Mr. Metzler failed to state a claim for municipal liability.

### CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Harris L Hartz
Circuit Judge

11