**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 1, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

CHETAN PATEL,

        Plaintiff - Appellant,

v.

ROGER HALL, in his official and
individual capacities; STACY
BUBLA, in her individual capacity;
ROBERT WILSON, in his individual
capacity; SHANNON ARMSTRONG,
in his individual capacity; BRENT
GODFREY, in his individual capacity;
JULIE FABER, in her individual
capacity; STEVE SHAY, in his
individual capacity; JOHN
FRENTHEWAY, in his individual
capacity,

        Defendants - Appellees.

No. 15-8110

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 1:14-CV-00069-NDF)**

---

Philip E. Abromats (Letitia C. Abromats with him on the briefs) of Philip E.
Abromats, P.C., Greybull, Wyoming, for Plaintiff–Appellant.

Richard Rideout of the Law Offices of Richard Rideout, P.C., Cheyenne,
Wyoming, for Defendant–Appellee Roger Hall in his official capacity.

Jackson M. Engels, Senior Assistant Attorney General, Cheyenne, Wyoming, and
Larry B. Jones of Burg, Simpson, Eldredge, Hersh & Jardine, P.C., Cody,
Wyoming (Peter K. Michael, Wyoming Attorney General, and John D. Rossetti,
Deputy Attorney General, Cheyenne, Wyoming, with them on the briefs), on

behalf of Defendants–Appellees Roger Hall, Stacy Bubla, Robert Willson, Steve Shay, and John Frentheway in their individual capacities.

---

Before **BRISCOE**, **McKAY**, and **MATHESON**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Plaintiff Chetan Patel appeals from the district court's grant of summary judgment in favor of Defendants in this 42 U.S.C. § 1983 federal civil rights case, in which Plaintiff raised numerous claims against various police officers and other governmental officials involved in his arrest on charges of felony VIN fraud and the related search and seizure of his property in Basin, Wyoming.

**I.**

On the evening of April 20, 2011, the Basin Police Department in Big Horn County, Wyoming, received a phone call from Annette Austin asking for a police officer to come to her husband's auto-repair business, which was located in a building her husband, Wade Austin, rented from and shared with Plaintiff. Officer Stacy Bubla responded to the call, later joined by Officer Roger Hall. The officers spoke with Wade and Annette Austin, as well as their son Kasey, who worked in the shop with his father.[1]

---

[1] Ms. Austin also worked in the shop when they needed help, and she indicated in her deposition that she occasionally saw Officer Hall when he came to the shop (presumably for repairs on the vehicle he had purchased there,

Mr. Austin told the officers that he had noticed earlier in the day that the Vehicle Identification Number (VIN) plate was missing from the cab of a truck he was repairing for Plaintiff and that, after he asked Plaintiff about the missing VIN plate and then left the shop for several hours, he discovered on his return that the cab now contained a VIN plate taken from a different cab. Mr. Austin also told the officers that a second truck belonging to Plaintiff was missing a VIN plate and that Plaintiff had made comments about how easy it is to change the VIN on a vehicle. He further reported that Plaintiff had told him, when asked about the missing VIN plate, "that he talks too much and that it will get him into trouble," and "that when he talked to people to only tell them very little or to lie to them." (Appellant's App. at 230.)

After speaking with the Austins, the officers contacted John Frentheway, an attorney at the County Attorney's office. They asked Mr. Frentheway whether they could permit the Austins to remove their belongings from the premises and whether they should seal the building pending a search warrant. Mr. Frentheway answered yes to both inquiries. The officers photographed the trucks with missing or replaced VIN plates, which Mr. Austin had pointed out to them, and tagged all of the vehicles in the shop. The officers then locked and sealed the shop with police tape before leaving.

---

although Ms. Austin's testimony was not clear on this point).

The next morning, all three Austins submitted written statements to the police and swore to their truthfulness in front of a notary. All three statements included much of the same information that the officers recorded in their police reports. They also included the additional facts that Mr. Austin worked on vehicles belonging to Plaintiff in exchange for rent and that Plaintiff had asked Ms. Austin to get a bond (presumably a notary bond) so she could sell his vehicles. Mr. Austin and his son, Kasey, further reported that Plaintiff had started telling them two weeks previously that they needed to move the vehicles off the premises to the town of Worland "because they were starting to draw the state[']s attention" (*id.* at 224) and that they needed to stop working on customers' vehicles until they had first repaired all of Plaintiff's cars.

On the same morning the Austins submitted their written witness statements to the police, Officer Hall drafted an affidavit for a search warrant, in which he summarized the Austins' witness statements and his own observations from his visit to the shop on the previous night. However, all of the judges in Big Horn County were attending meetings in different parts of the state on that date, so Officer Hall was unable to immediately obtain a search warrant. Concerned that Plaintiff might remove evidence from the premises, he again contacted Mr. Frentheway and asked him whether there was probable cause to arrest Plaintiff. Based on the Austins' sworn statements, Mr. Frentheway concluded there was sufficient probable cause to justify a warrantless arrest for felony VIN fraud.

Officer Hall accordingly arrested Plaintiff on April 21.

The following day, a judge of the county court issued an arrest warrant for Plaintiff and a search warrant for the Basin property. Various law enforcement officers began searching the property on April 22. During their search of the property that morning, they discovered a razor blade, a syringe, and white powder on a table in the shop.[2] After discovering these items, the officers left the building and obtained a new warrant to search for drugs and drug paraphernalia as well as "VIN plates from the vehicles inside these buildings and on the property that have been removed and replaced with ones from other vehicles." (*Id.* at 632.) The officers then resumed the search and continued searching until April 30, at which time they unsealed the building and returned the keys to Plaintiff. In addition to the suspected drugs and paraphernalia, they seized two loose VIN plates, the truck with the switched VIN plates, the driver's door of the truck from which the switched VIN plate was taken, the truck with the missing VIN plates, a third truck,[3] and an empty insurance envelope which they found laying on the shop floor near the first truck on which was written a claim number and an insurance agent's contact information. They also photographed several

[2] Mr. Austin later testified that the powder was drywall powder and that he used the syringe and razor blade in his work as a mechanic.

[3] Judging from the police reports in the record, this vehicle was apparently seized because the cab had been modified around the area where the transmission was located and the officers were unable to locate the derivative VIN for the transmission in order to ensure that no tampering had occurred.

documents—primarily vehicle titles and bills of sale—on which VIN numbers were written, and they inventoried many of the contents of the building in order to follow up on certain confidential informants' tips about allegedly stolen merchandise.

Plaintiff was released from jail on April 22. In June, the county circuit court held a preliminary hearing and bound Plaintiff over to the state district court on charges of felony VIN fraud. These charges were dismissed without prejudice on October 4, 2011, and have not been re-filed against Plaintiff. All of the seized items were returned to Plaintiff in December 2011.

In April 2014, Plaintiff filed this § 1983 complaint, in which he raised fifteen federal claims and nine state law claims against various Defendants. Defendants filed separate motions for summary judgment, in which they mainly argued they were entitled to qualified immunity on the claims against them.

In his response to Defendants' motions for summary judgment, Plaintiff relied in part on an affidavit purportedly signed by Wade Austin in 2014. To support the admission of this affidavit into evidence, Plaintiff's two attorneys each submitted affidavits stating they had met with Plaintiff and Wade Austin at a local restaurant in April 2014. At that meeting, Mr. Austin allegedly made several statements that differed from his original sworn police witness statement. For instance, he allegedly stated that it was his wife Annette, not himself, who invited the officers into the building, that the officers did not ask him for

-6-

permission to enter or search his business, and that he never believed that any aspect of Plaintiff's business, including his actions regarding the VIN plates, was illegal. Plaintiff's counsel drafted an affidavit from her notes for Mr. Austin to sign and made corrections to the affidavit at his direction. The affidavit was then signed, notarized, and returned to counsel. In his 2015 deposition, Mr. Austin agreed he had met with Plaintiff's counsel at the restaurant and signed an affidavit typed by Plaintiff's counsel. However, he stated that the affidavit produced by Plaintiff's counsel in this litigation was not the affidavit he had read and signed before. "This is – somebody stuck my signature page on something that I didn't write. . . . [Plaintiff's counsel] prepared it and brought it for me to proofread, but this is not the document that I proofread and had notarized." (*Id.* at 1078.) In their affidavits, Plaintiff's counsel averred that the affidavit they submitted in this litigation was the same affidavit Wade Austin signed in 2014.

In granting summary judgment in favor of Defendants, the court refused to consider the purported Wade Austin affidavit produced by Plaintiff's counsel. The court also disregarded Plaintiff's attorneys' affidavits based on its conclusion that relying on the attorneys' affidavits would make them material witnesses to this case in violation of Rule 3.7 of the Wyoming Rules of Professional Conduct. The court then concluded that the purported Wade Austin affidavit should be disregarded both because it was irrelevant and because, without Plaintiff's counsel's affidavits, there was no admissible evidence that it was in fact signed

-7-

by Wade Austin.

On the merits, the court held that Plaintiff had not shown a constitutional violation relating to the search and seizure because the initial search of the property was allowed by Wade Austin's consent, Officers Bubla and Hall had probable cause to seize the shop and its contents while they obtained a search warrant, the subsequent search of the property was conducted based on a properly issued search warrant supported by probable cause, and there was sufficient probable cause for Patel's arrest. The court rejected Plaintiff's claims that Defendants had exceeded the scope of the search warrant on the grounds that Plaintiff had not shown that the officers' alleged actions—taking photographs and inventorying items outside the scope of the warrant; looking in factory-sealed boxes; seizing three trucks, a truck door, and an envelope; and extending the search for eight days—violated clearly established law. The court rejected Plaintiff's official-capacity claims against Officer Hall for two separate reasons, concluding that Officer Hall did not violate Plaintiff's constitutional rights and that there was no evidence he was an employee in a policymaking position. Finally, the court dismissed Plaintiff's state law claims with prejudice based on both Plaintiff's apparent failure to comply with the provisions of the Wyoming Governmental Claims Act as well as the state defense of qualified immunity.

Plaintiff appeals the district court's entry of summary judgment on his federal claims and its dismissal with prejudice of his state law claims.

## II.

We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court. *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013). Under these standards, "[s]ummary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143–44 (10th Cir. 2013).

We first consider the district court's grant of summary judgment in favor of Officer Hall on Plaintiff's official-capacity claim against him. An official-capacity claim against a municipal officer is the same as a suit against the municipality. *Watson v. City of Kan. City, Kan.*, 857 F.2d 690, 695 (10th Cir. 1988). Such a claim requires evidence that the municipality "caused the harm through the execution of its own policy or customs or by those whose edicts or acts may fairly be said to represent official policy." *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988). Here, Plaintiff relies on the second way of

establishing municipal liability: he does not argue his alleged harm was caused by municipal policies or customs, but instead argues he was directly harmed by Officer Hall's actions relating to the search and seizure, contending that these actions "may fairly be said to represent" the official policy of the Town of Basin given Officer Hall's position in the police department.

Notably, at the time of the events in question, Basin had no chief of police, since the person chosen to be the new chief had not yet been sworn into office.[4] Officer Hall was apparently the senior officer in the police department, and the mayor told him that he "was in charge of getting things done for the police department until the new chief was in place." (Appellant's App. at 651.) Officer Hall was also described in some depositions and police reports as the acting police chief for this time period, although Defendants dispute this characterization and point to other evidence that Officer Hall did not consider himself to be the acting chief of police, but simply the "officer in charge." (*Id.* at 1172.) Plaintiff does not cite to any other evidence about the nature of Officer Hall's position in the police department or the authority he had during the interim time period before the new chief was sworn into office.

To decide whether a government employee is a final policymaker whose actions can give rise to municipal liability, we ask (1) whether the employee is

---

[4] The new chief was sworn into office on May 11, 2011. (Appellant's App. at 1169.)

meaningfully constrained by policies not of his own making; (2) whether his decisions are final, i.e., not subject to any meaningful review; and (3) whether the policy decisions and actions at issue in this case fall within the realm of his grant of authority. *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995). In his opening brief, Plaintiff argues that a jury could find this test to be satisfied because Officer Hall was "in charge" of the police department and his actions fell within his grant of authority as the head of law enforcement efforts in the Town of Basin. In response, Defendants argue that it is Plaintiff's burden to establish every element of his claim against the Town, and his failure to present any evidence on the first and second elements of the municipal-liability test mandates summary judgment in favor of Officer Hall.

In his reply brief, Plaintiff states that it is "impossible to tell from [state and local ordinances] whether someone is an acting police chief or policymaker" for the Town of Basin. (Appellant's Reply Br. at 26.) Indeed, he effectively concedes that he cannot satisfy all of the elements of the municipal-liability test, given that "there is no paper trail or dispositive legal authority" to indicate whether or not Officer Hall—the officer "in charge" of a tiny police department in a town of 1,185 people—was meaningfully constrained by policies not of his own making, whether or not his decisions were final or were instead subject to meaningful review, and whether or not his actions fell within the realm of his grant of authority. (*Id.* at 27.) Plaintiff argues, however, that he should not be

-11-

required to satisfy all of these elements, given that such information is in Defendants' hands and is undiscoverable by him. He argues that we should adopt a *McDonnell Douglas*-style burden-shifting analysis to evaluate municipal-liability claims in this type of situation, allowing a jury to infer that the senior officer in the police department of a small town has final policymaking authority unless the municipality presents evidence to rebut this inference. *Cf. McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–03 (1973) (establishing a burden-shifting test for deciding whether a plaintiff in an employment discrimination case should survive summary judgment).

While we are sympathetic to Plaintiff's concerns about the difficulties of proving who is a final policymaker in a small town with an informally run government, we are not persuaded it would be appropriate or prudent for us to depart from our usual summary judgment and municipal-liability standards in this case, especially in light of the fact that Plaintiff did not even raise this argument until his reply brief. The evidence Plaintiff presented of Officer Hall's position in the police department is both limited and ambiguous, and we are not persuaded that a jury could reasonably find Officer Hall to have final policymaking authority for the Town of Basin based simply on the facts that (1) he was placed temporarily "in charge" of the police department for the short period of time before the new chief took office and (2) he was described as the acting chief of police by some people. We therefore affirm the district court's grant of summary

judgment in favor of Officer Hall on Plaintiff's official-capacity claims.

We turn next to Plaintiff's federal claims against Defendants in their individual capacities. Plaintiff claims his rights were violated through (1) the warrantless search of his property; (2) the warrantless seizure of his real and personal property; (3) his warrantless arrest; (4) arrest and search warrants unsupported by probable cause; and (5) a search exceeding the scope of the warrant.

Defendants assert qualified immunity as a defense to these claims, so the burden shifts to Plaintiff to establish both that the defendants violated a constitutional right and that the right was clearly established at the time of the violation. *See Castillo v. Day*, 790 F.3d 1013, 1019 (10th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). A right is clearly established if, at the time of the conduct, existing precedent has "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Ordinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the "clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011). A prior case need not have identical facts. *Id.* Rather, "[t]he pertinent question is 'whether it would [have been] clear to a reasonable officer that his [or her] conduct was unlawful in the situation.'" *Id.* (quoting *Bowling v. Rector*, 584 F.3d 956, 964

-13-

(10th Cir. 2009)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). We must not "define clearly established law at a high level of generality" because "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 742).

First, Plaintiff argues that Officers Hall and Bubla violated his Fourth Amendment rights when they initially searched the shop without a warrant. We disagree because the search was conducted pursuant to consent. A search does not require a warrant or probable cause if it is conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Romero*, 749 F.3d 900, 905 (10th Cir. 2014). An officer may rely on a third party's consent if that party has actual or apparent authority to consent. *Romero*, 749 F.3d at 905. An individual has actual authority if he or she has "(1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it." *Id.* (quoting *United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004)). A party has apparent authority if "the officer relies on facts that turn out to be wrong or incomplete so long as the officer's belief at the time of the search was reasonable." *Id.* "Determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority

-14-

over the premises?" *Id.* (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (brackets omitted)). "Non-verbal conduct, considered with other factors, can constitute voluntary consent to search." *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999).

The initial search of Plaintiff's shop was conducted pursuant to consent. Ms. Austin contacted the police and requested that an officer come to the shop. Mr. and Ms. Austin were both present, provided the officers information, and showed the officers around the shop. Plaintiff's arguments that Mr. Austin did not verbally invite the officers in and that Ms. Austin had no authority to consent are unavailing. As discussed, non-verbal conduct is sufficient to indicate consent. Showing the officers around the shop indicated Mr. Austin's consent. Further, Ms. Austin had joint access to and control over the shop. The record indicates that Ms. Austin, at the request of Plaintiff, had obtained a bond in order to sell cars for Plaintiff. The record also shows that she would sometimes help Mr. Austin with his vehicle repair work. The fact that Ms. Austin's name did not appear on the lease does not diminish her authority to consent to a search based on her access to and control over the shop. Thus, Ms. Austin had actual authority to consent to a search of the shop. At the very least, both Mr. and Ms. Austin had apparent authority to consent to the search. A police officer who is called to come to a business by the business owner's spouse and then invited inside by the caller, in the presence of the owner of the business and with no objections made,

-15-

is justified in acting upon the invitation without further inquiry. *See Rodriguez*, 497 U.S. at 188.

Second, Plaintiff argues that Officers Hall and Bubla violated his Fourth Amendment rights when they sealed the building and some of his vehicles without a warrant or probable cause. We conclude Plaintiff's rights were not violated because the officers had probable cause to seal the shop. "[S]ecuring a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." *Segura v. United States*, 468 U.S. 796, 810 (1984). Probable cause exists "when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed" and that the person or property was involved in the crime. *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)). "Probable cause is not a precise quantum of evidence." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). Rather, the relevant question is whether there was a "substantial probability"—"something 'more than a bare suspicion'"—that the person or property was involved in a crime. *Id.* (quoting *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011)).

There was probable cause to support the seizure of the shop. This seizure

took place after the initial search of the shop, for which the Austins provided consent. Prior to that time, Ms. Austin had called the police department to report suspected criminal activity occurring on the premises. Mr. Austin had told the officers about the conversation he had with Plaintiff that morning in which Plaintiff told Mr. Austin that it was easy to change VIN plates, Mr. Austin informed Plaintiff that it was illegal to do so, and then Plaintiff told Mr. Austin that "no one would know if they didn't tell them and that Wade talked too much, he just needed to keep his mouth shut." (Appellant's App. at 229.) The officers had also observed the vehicles in the shop with missing and reportedly switched VIN plates. Based on the initial phone call, the statements made by Mr. Austin, and the preliminary search of the building and certain vehicles, Bubla and Hall had probable cause to believe that VIN plates were being fraudulently altered on the premises and that the vehicles involved in the crime were present. Thus, they were justified in sealing the building and tagging some of the vehicles in order to preserve the evidence until a search warrant could be obtained and executed.

Third, Plaintiff argues that Hall violated his Fourth Amendment rights by arresting him without a warrant. The arrest took place without a warrant, but one was obtained the following day. We conclude that the arrest was valid because Hall had probable cause to believe that Patel was fraudulently altering VIN plates. The Fourth Amendment requires that an officer must have probable cause to initiate a search, arrest, and prosecution. *Stonecipher*, 759 F.3d at 1141.

-17-

Probable cause exists if there is a "substantial probability" that the suspect committed the crime. *Id.* Officers are immune from any suit arising from an allegedly unlawful arrest if there was "arguable probable cause" to arrest the plaintiff. *Id.* Officers must "reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." *Cortez*, 478 F.3d at 1117 (quoting *Romero*, 45 F.3d at 1476–77)).

The information justifying the warrantless seizure of the building and vehicles also supports Plaintiff's arrest. Plaintiff claims that Officer Hall did not adequately investigate or interview Plaintiff before making the arrest, but these allegations are not supported by the record. After the search and temporary seizure of the shop, Officer Hall obtained written statements from Wade, Annette, and Kasey Austin, all of which substantiated the statements they had made the day before. Officer Hall also met and spoke with Plaintiff personally. He explained to Plaintiff that the property had been tagged and sealed because VIN plates had been removed and/or replaced. During this conversation, Plaintiff stated that he knew about the switched VIN plates, but claimed that he had not worked on the vehicles himself. Officer Hall believed this statement to be false because he had previously observed Plaintiff working on vehicles in the shop. These statements, in addition to the facts discussed above, established probable cause to arrest Plaintiff for suspected fraudulent alteration of VIN plates.

-18-

Fourth, Plaintiff argues that the warrants to search his shop and for his arrest were defective because they were "procured with recklessly insufficient information." (Appellant's Opening Br. at 26 (capitalization standardized).) We disagree. An affiant seeking an arrest warrant may not knowingly or recklessly include false statements in an affidavit, or omit from it information which would vitiate probable cause. *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015). If an affiant does so, "we measure probable cause by (1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant." *Id.* An officer is not required to establish guilt beyond a reasonable doubt or to eliminate all other potential suspects before making an arrest, so long as there is a "substantial probability" that the suspect committed the crime. Plaintiff provides no support for his assertions that law enforcement cannot reasonably rely on witness testimony without first checking the witness's criminal history, or that it is unreasonable to arrest someone whose criminal record includes only a municipal violation.

None of the information that Plaintiff claims was "critical" would vitiate probable cause, even if considered. Plaintiff claims that Officer Hall should have included information about the "business-related conflict" between Plaintiff and Mr. Austin: that two weeks prior to Mr. Austin's reports to the police, Plaintiff had told Mr. Austin to stop working on other customers' vehicles until Plaintiff's

-19-

vehicles were completed. (Appellant's Opening Br. at 30–32.) Plaintiff claims this "conflict" gave Mr. Austin "a strong motive to concoct a false story about [Plaintiff]," (*id.* at 31), but he offers no evidence to support this interpretation. The record, in fact, suggests that Plaintiff's orders to work on his vehicles first further supports a finding of probable cause. Both Mr. Austin and his son Kasey informed Officer Hall that Plaintiff made this demand because he needed to move his vehicles to Worland in order to avoid the state's attention. (Appellant's App. at 222, 224.) These statements suggest that Plaintiff was seeking to hide illegal activity. Further, Plaintiff's demand that the Austins finish his vehicles first was a common customer service issue that Mr. Austin encountered. In his deposition, Mr. Austin testified that Plaintiff was "not the first customer who's told me that. I've had all kinds of customers, 'Don't you touch anything else until you fix mine.' . . . I've dealt with it before, and I just do it my way. I'm the one doing the work. I can do it my way." (*Id.* at 1110.) Plaintiff's orders to prioritize his vehicles would not lead a reasonable officer to believe that a "business-related conflict" existed such that Mr. Austin would feel compelled to lie about Plaintiff's actions. Accordingly, it was not necessary that such information be included in the application for a warrant.

Plaintiff also argues that Officers "Hall and Bubla appear to have been told more than they revealed in the affidavit" because they found the VIN plates quickly. (Appellant's Opening Br. at 32–33). Plaintiff suggests that either the

-20-

officers discovered the VIN plates unlawfully during the prior night's allegedly unlawful search, or that Mr. Austin told the officers where the VIN plates were. (*Id.* at 33.) Because the prior search was lawful due to consent, this first argument is unavailing. Personal observation of contraband during a lawful search would bolster, not vitiate, probable cause. Further, even if Mr. Austin knew where the VIN plates were (a proposition the record does not support), such knowledge would not vitiate probable cause. Mr. Austin ran a business on the premises, and he allegedly observed Plaintiff engaging in suspicious activities relating to the VIN plates. Accordingly, it would not be surprising if Mr. Austin had known the location of some of the VIN plates involved. Plaintiff further argues that, if Mr. Austin had shown Officers Hall and Bubla where the VIN plates were during the initial search—again, a proposition that is wholly unsupported by the record—they would have seen the syringe and razor blade on the table. This information has no relevance to the question of whether probable cause existed to believe that Patel was altering VIN numbers on the premises and that some of the vehicles involved might still be on the premises. In fact, if Officers Hall and Bubla had observed the syringe and power during their initial lawful search, this observation would have established probable cause to search for drugs and drug paraphernalia in addition to fraudulently altered VIN plates. Accordingly, it was not unlawful for this information to be omitted.

Fifth, Plaintiff argues that the officers exceeded the scope of the search

-21-

warrant in three ways: (1) the police searched factory-sealed boxes of merchandise, which could not have contained VIN plates; (2) the police photographed title documents and other items not specifically listed in the search warrant; and (3) the police seized three trucks, a truck door, and an envelope found on the ground near one of these trucks, none of which were mentioned in the search warrant.[5]

Plaintiff's first allegation is not supported by any record evidence, and thus there is no dispute of fact to support Plaintiff's claim on this allegation. Plaintiff concedes that the law is not clearly established on the question of whether photographing items not listed in the search warrant exceeds the scope of the warrant, and thus the officers are entitled to qualified immunity on this allegation. As for Plaintiff's third allegation, it is at least arguable that the officers exceeded the scope of the warrant by seizing the trucks and truck parts which evidenced VIN tampering, since the warrant technically only authorized the search for and seizure of the VIN plates themselves. However, particularly in light of the fact that removing the VIN plates from the vehicles in order to seize them separately would have destroyed much of their evidentiary value and created additional legal issues, we are not persuaded—and Plaintiff has certainly failed to show—that

---

[5] Although Plaintiff argued in the district court that the eight-day search exceeded the scope of the warrant, he appears to have abandoned this claim on appeal. (*See* Appellant's Opening Br. at 35–39.)

established precedents clearly put the officers on notice that they were violating constitutional law by assuming that the warrant permitted them to seize the vehicles as well as the VIN plates they contained. *Cf. United States v. Hargus*, 128 F.3d 1358, 1363 (10th Cir. 1997) ("Although we are given pause by the wholesale seizure of file cabinets and miscellaneous papers and property not specified in the search warrant, the officers' conduct did not grossly exceed the scope of the warrant. Their conduct was motivated by the impracticability of on-site sorting and the time constraints of executing a daytime search warrant. The officers were authorized to seize ten broad categories of records, and those records were present in every drawer of both file cabinets. . . . Under these circumstances the officers did not grossly exceed the warrant in concluding they did not need to examine at the site every piece of paper in both cabinets.").

Finally, regarding the seizure of the envelope, we hold that Plaintiff has met his burden of showing that the officers are not entitled to qualified immunity on this issue. When "a warrant clearly and precisely specifies items to be seized, and the officers executing the warrant seize additional items, those officers act unreasonably for Fourth Amendment purposes unless their conduct may be justified under an exception to the warrant requirement." *Bowling v. Rector*, 584 F.3d 956, 971 (10th Cir. 2009). The warrant in this case authorized the seizure of VIN plates, illegal drugs, and drug paraphernalia. Although the officers were justified in searching the envelope to determine whether it contained any of the

-23-

specified items, they have offered no exception that would allow them to then seize the envelope.

Next, Plaintiff argues that, although his complaint only raised two claims against Defendant Frentheway, other claims against him "should have been anticipated" from the claims Plaintiff made against other Defendants and from the evidence adduced, and he contends that the district court should have recognized and permitted him to proceed on these unraised claims. (Appellant's Opening Br. at 44.) However, Plaintiff never sought to amend his complaint to include these additional claims against Defendant Frentheway, and "[w]here a request for leave to amend was not presented to the trial court, there is nothing for the appellate court to review regarding amendment," *Snell v. Seidler*, 2005-Ohio-6785 (Ohio Ct. App. 2005). The district court did not err in failing to sua sponte amend the complaint to include Defendant Frentheway in claims that Plaintiff did not raise against him.

We next consider Plaintiff's argument that the district court abused its discretion by disregarding the affidavit purportedly signed by Wade Austin in 2014. The district court disregarded this affidavit based in part on its conclusion that there was no admissible evidence as to its authenticity due to the court's holding that Plaintiff's attorneys' affidavits were inadmissible based on Wyoming's professional conduct lawyer-as-witness rule. We note that at least one court has suggested it is improper to disregard evidence under the lawyer-as-

witness rule, since this rule "does not speak to the admissibility of any particular statement [the attorney] made," but rather "deals with whether he can ethically represent his client" at trial, and thus any concerns about the lawyer acting as a witness should be addressed through a motion to disqualify rather than the exclusion of evidence presented in pretrial proceedings. *Burch-Lucich v. Lucich*, 2013 WL 5876317, at *9 (D. Idaho Oct. 31, 2013) (interpreting an Idaho ethical rule virtually identical to the Wyoming rule at issue here). Moreover, Defendants cite to no pertinent authorities to support the district court's decision to use this ethical rule to disregard Plaintiff's evidence. However, we need not resolve this question in this appeal because we conclude that, even if the facts in the purported Wade Austin affidavit are considered as part of the summary judgment analysis, they are insufficient to create a material dispute of fact defeating Defendants' assertion of qualified immunity.

Plaintiff identifies the following statements in the purported Wade Austin affidavit as facts supporting his claims: (1) Annette Austin, not Wade Austin, invited the officers to enter and search the business, and the officers did not ask Mr. Austin for consent; (2) Mr. Austin had no intention of abandoning his shop, but Officer Hall told him they were seizing the property and he needed to take anything he wanted that night; (3) Officer Hall found a removed VIN plate, the syringe, and the white powder on the night of April 20; (4) Officer Hall told Mr. Austin the police had been investigating Plaintiff for three to four years and were

looking for a reason to search the property; and (5) Ms. Austin wrote the statements for her husband and son as well as for herself; the police reviewed the statements and changed some of the content, and then they had Mr. Austin rewrite his statement in his own handwriting. We are not persuaded any of these alleged facts defeats Defendants' assertion of qualified immunity.

First, as discussed, both Mr. and Ms. Austin had actual authority to consent to a search of the shop. Thus, Plaintiff's claim that Ms. Austin invited the officers into the shop is irrelevant to our conclusion that the search was conducted pursuant to consent.

Second, Plaintiff asserts that Mr. Austin's alleged desire not to abandon the shop discredits his other statements that he wanted to pack up and leave the shop because he didn't want to be involved in anything illegal. However, we are not persuaded that this fact has any relevance to the issues before us in this appeal—whether the officers violated Plaintiff's clearly established constitutional rights by searching the building, arresting Plaintiff, and seizing evidence—and thus our earlier analysis of these claims stands undisturbed.

Third, Plaintiff argues that the affidavit's allegation that Officer Hall discovered the syringe and white powder along with the VIN plate before he obtained the first search warrant establishes a violation of the constitutional requirement for a warrant to particularly describe the things to be seized. For support, he cites to a case in which the police used a single search warrant to

seize contraband that was not within the scope of the warrant, despite the

officers' earlier knowledge of this contraband's existence.  *See Coolidge v. New*

*Hampshire*, 403 U.S. 443, 471 (1971).  However, the police in this case obtained

a second, expanded search warrant to search for drugs and drug paraphernalia,

and thus we do not see how the search pursuant to this expanded warrant could

have violated the particularity requirement, regardless of when Officer Hall saw

the syringe and powder at the shop.

Fourth, Officer Hall's previous investigation of Plaintiff and his subjective

desire to search the building do not vitiate probable cause.  Plaintiff argues that

Officer Hall omitted material facts from his search warrant affidavit, and he

argues that Officer Hall's stated desire to find an excuse to search the property

helps to establish that these omissions were made recklessly.  However, as

discussed above, we are not persuaded that any of these omissions were material

to the question of probable cause.  Thus, this statement in the purported Wade

affidavit fails to change our conclusion that the warrants were validly issued.

Finally, as for the allegation that the police changed some of the contents

of Mr. Austin's witness statement, we note that Mr. Austin has consistently

explained that the police "had [him] reword some of the statement" so "people

[would] understand it better," (Appellant's App. at 1107; *see also id.* at 520), and

the affidavit does not indicate that the changes were substantive rather than

editorial.  Moreover, Mr. Austin swore to the truth of the witness statement's

contents in front of a notary public, and his wife and son likewise swore to the truth of statements containing very similar information. With this context in mind, we conclude that a jury, even taking the evidence in the light most favorable to Plaintiff, could not reasonably infer that, had Mr. Austin's witness statement not been altered in some unexplained way by the police, it would have provided some unidentified and unknown information that would have vitiated probable cause despite all of the other evidence of probable cause provided by Mr. Austin's wife and son and by the two police officers' own observations of the missing and swapped VIN plates in Plaintiff's vehicles. Such a conclusion could only be reached by speculation, not by inference. For similar reasons, the affidavit's bare allegation that Ms. Austin initially wrote out Mr. Austin's witness statement—which he then signed and swore to—is insufficient to undermine our conclusion that Officer Hall had probable cause to search the shop and arrest Plaintiff. We therefore conclude that any error by the district court in disregarding the purported Wade Austin affidavit was harmless, since none of the potentially problematic statements identified by Plaintiff in this affidavit alter any of our previous conclusions regarding Plaintiff's failure to establish a violation of his constitutional rights.

We turn then to the final issue in this appeal—whether the district court erred in dismissing Plaintiff's state law claims with prejudice. The district court gave two independent reasons for dismissing these claims. First, although only

-28-

Defendant Frentheway raised this argument in his motion for summary judgment, the district court concluded that Plaintiff's state law claims were barred by the Wyoming Governmental Claims Act because he had not proven that he complied with this Act's requirements. Second, the court briefly stated that Defendants were additionally entitled to the state defense of qualified immunity, which applies when "(1) the officer was acting within the scope of his or her duties; (2) the officer was acting in good faith; (3) the officer's acts were reasonable under the circumstances; and (4) the officer's acts were discretionary duties and not merely operational or ministerial duties." *Darrar v. Bourke*, 910 P.2d 572, 575–76 (Wyo. 1996). Without addressing the specific elements of this test or the specific state law claims Plaintiff raised, including a claim of defamation based on a statement Officer Hall made to a newspaper, the court simply held that this test was satisfied based on the court's earlier conclusion that the officers had probable cause for the search and seizure.

We express grave concern over the manner in which the district court disposed of these state law claims. The court's primary reason for dismissing these claims was not raised by any Defendant except Defendant Frentheway, and the court's reasoning appears to be at least debatable, if not erroneous, given the supplementary evidence Plaintiff has provided to support his assertion that he did indeed comply with the Wyoming Governmental Claims Act as to all Defendants

except Defendant Frentheway[6]—evidence he did not present below due to the other Defendants' failure to raise this argument in their summary judgment briefing. As for the district court's secondary reason for dismissing these claims, the court failed both to consider the distinct factual premises and legal elements underlying each of Plaintiff's state law claims and to address how the elements of the state defense of qualified immunity would apply to each of these claims. Moreover, we note that Defendants do not address the question of state qualified immunity in their briefs on appeal, relying solely on the Wyoming Governmental Claims Act to support affirmance of the district court's decision. Given the extremely cursory nature of the district court's resolution of the state law claims, the supplementary evidence and arguments Plaintiff has submitted regarding the district court's sua sponte application of the Claims Act, and Defendants' failure to brief the district court's alternative ground for dismissal, we conclude that remand for further consideration by the district court is appropriate. *Cf. Quinn v. Young*, 780 F.3d 998, 1017–18 (10th Cir. 2015) ("But, in adjudicating these claims, the district court faltered in a critical respect—*viz.*, it limited its express reasoning to the Fourth Amendment claim, offering us nothing to review but its bare judgment with respect to the other claims. Under these circumstances, and

---

[6] Plaintiff concedes that he failed to comply with the Act's requirements as to Defendant Frentheway (Appellant's Reply Br. at 23), and we will affirm the court's dismissal of his state law claims against Defendant Frentheway on this basis.

given the complexities of this case related to a larceny sting operation, we believe that it would be inappropriate and imprudent for us to address in the first instance the merits of the Officers' appeal from the district court's qualified-immunity ruling regarding Plaintiffs' malicious-prosecution and substantive due process claims.").

On remand, the district court should first reconsider whether it should decline to exercise pendent jurisdiction over the state law claims and instead dismiss them without prejudice in light of the limited nature of the sole remaining federal claim in this action and the arguable existence of some unsettled questions of state law. *See* 28 U.S.C. § 1367(c)(2) (providing that a district court may decline to exercise pendent jurisdiction over a state law claim that "substantially predominates over the claim or claims over which the district court has original jurisdiction"). If the district court exercises its discretion to retain pendent jurisdiction over these claims, it should provide Plaintiff with the opportunity to address the question of his compliance with the Wyoming Governmental Claims Act, and it should re-evaluate how the state defense of qualified immunity would apply to each of Plaintiff's state law claims individually and not as an undifferentiated whole.

## III.

For the foregoing reasons, we **REVERSE** the grant of summary judgment as to the seizure of the envelope and **REMAND** for further proceedings on this

claim. We **AFFIRM** the district court's grant of summary judgment in favor of all Defendants on the remainder of Plaintiff's federal claims. Finally, we **AFFIRM** the district court's dismissal with prejudice of Plaintiff's state law claims against Defendant Frentheway but **REVERSE** and **REMAND** for further proceedings the dismissal of these claims as to all other Defendants. Because we are reversing and remanding the district court's dismissal of Plaintiff's state law claims, we **DENY AS MOOT** Plaintiff's motion to supplement the appellate record with evidence relating to these claims.