**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 24, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LARRY DELBERT PINNEY, JR.,

     Plaintiff - Appellant,

v.

THE CITY OF TULSA OKLAHOMA,

     Defendant - Appellee.

No. 16-5171
(D.C. No. 4:15-CV-00281-GKF-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.
_____

Mr. Larry Delbert Pinney, Jr., was arrested for indecent exposure, a charge that was later dismissed at his preliminary hearing. Afterwards, Mr. Pinney sued the City of Tulsa in state court under 42 U.S.C. § 1983, alleging constitutional violations stemming from what he claimed was an unlawful arrest.[1] Upon removal to federal court, the district court granted summary judgment to the City. We now affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Mr. Pinney also named the arresting officer and several other defendants, all of whom he voluntarily dismissed. This appeal concerns only the City of Tulsa.

I

The following facts are undisputed: Officer Wyatt Poth of the Tulsa Police Department responded to a call for indecent exposure at 2711 E. 88th Street, Apt. 569 in Tulsa. When he arrived on scene, Officer Poth encountered three young girls— two thirteen-year old twins and their eleven-year old friend. The eleven-year old girl reported that she was sitting on a wall near her apartment building when one of the twins noticed a man inside the apartments was staring at them. She told Officer Poth the window blinds were open and the man inside was sitting in a chair wearing a yellow robe. The girl told Officer Poth that one of the twins yelled at the man to stop staring at them. She said the man responded by opening his robe and "flashing" them by exposing his erect penis, which had a ring around it. Aplt. App. at 11.

Officer Poth also spoke with one of the twins, who stated she was sitting on the wall with her friend when they noticed a man inside one of the apartments was looking at them. She said the man was sitting in a chair by the window, in front of a computer, wearing a yellow robe. She yelled at the man to stop staring at them and said he smiled, opened his robe, and exposed his erect penis, which had a piercing. She described the piercing as black with "shiny silver balls on both ends." *Id.* at 7.

Officer Poth then knocked on Mr. Pinney's door to get his version of events. Mr. Pinney answered the door wearing a yellow robe with nothing on underneath. Officer Poth entered Mr. Pinney's apartment and observed a computer in front of the window and a chair approximately two feet from the window. Mr. Pinney told Officer Poth that his wife was out getting food and the blinds had been closed, so the

girls must have looked in between the blinds. Mr. Pinney confirmed that he was wearing a penis ring. At that point, Officer Poth exited the apartment, notified a detective that he was arresting Mr. Pinney, and then reentered the apartment to arrest Mr. Pinney for indecent exposure. The charge was later dismissed.

After the criminal case was dismissed, Mr. Pinney brought this action in state court, alleging, among other things, unlawful arrest in violation of his Fourth Amendment rights. Once in federal court, the City moved for summary judgment, arguing that there was no constitutional violation because the arrest was supported by probable cause. The district court agreed, holding that Officer Poth reasonably concluded, based on his investigation, that a crime had been committed. The court explained that the girls' statements corroborated one another, the girls described in detail the alleged wrongdoing, and Officer Poth independently corroborated their stories by interviewing Mr. Pinney and confirming the layout of his apartment. The court therefore granted summary judgment to the City, and this appeal followed.

## II

"We review the grant of summary judgment de novo." *Harte v. Bd. of Cty. Comm'rs*, 864 F.3d 1154, 1161 (10th Cir. 2017), *petition for cert. filed*, (U.S. Nov. 13, 2017) (No. 17-704). "Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, 'there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). Although we afford the non-moving party "all reasonable inferences from the record," summary judgment still may be

3

appropriate if the non-moving party cannot identify any specific evidence showing a genuine factual dispute on an essential element of his claim. *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017) (internal quotation marks omitted).

To recover damages under § 1983 for unlawful arrest, a plaintiff must show he was arrested without probable cause. *Cottrell v. Kaysville City*, 994 F.2d 730, 733 (10th Cir. 1993). "Probable cause exists when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed and that the person . . . was involved in the crime." *Patel*, 849 F.3d at 981 (internal quotation marks omitted). The probable cause determination is based on the totality of circumstances, *Florida v. Harris*, 568 U.S. 237, 244 (2013), and "does not . . . require the suspect's guilt to be more likely true than false," *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (internal quotation marks omitted). The question is whether a reasonable officer would have concluded that the defendant "committed a crime." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "[T]he mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *see Painter v. City of Albuquerque*, 383 F. App'x 795, 797-98 (10th Cir. 2010) (unpublished) (recognizing same where the charge for which the suspect was arrested was dropped).[2]

---

[2] We may consider non-precedential, unpublished decisions for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A).

4

In Oklahoma, indecent exposure occurs when a person willfully, knowingly, and lewdly exposes his person or genitals in any public space or any place where other persons are present to be offended. Okla. Stat. tit. 21, § 1021(A)(1). The "indecent exposure need not always occur in a public place . . . [and] may be committed any place where others are present, including streets and private residences." *Martin v. State*, 674 P.2d 37, 39 (Okla. Crim. App. 1983). The statute "requires only that [the perpetrator] willfully expose himself in a place where others could see him and be annoyed." *Id.* at 40.

We have no difficulty concluding that Officer Poth had probable cause to arrest Mr. Pinney. Officer Poth responded to the location of an alleged indecent exposure and encountered three young girls. Two of the girls independently gave remarkably consistent statements. The eleven-year old girl reported that Mr. Pinney was staring at them from inside the apartment while sitting in a chair, wearing a yellow robe. She said that when her friend yelled at him to stop staring, he allegedly exposed his penis, which she could see through the open blinds. She was able to see well enough to discern that he was wearing a penis ring. The thirteen-year girl corroborated these allegations, stating that Mr. Pinney was wearing a yellow robe, sitting in a chair by the window in front of a computer. She yelled at him to stop staring, and Mr. Pinney smiled and exposed his penis, which she, too, identified as having a piercing in it.

Rather than simply accept these allegations, Officer Poth investigated Mr. Pinney's version of what happened. *See Cortez v. McCauley*, 478 F.3d 1108,

5

1119 (10th Cir. 2007) (recognizing that in some instances, bare allegations of wrongdoing, without any investigation, may not give rise to probable cause). Mr. Pinney answered the door wearing a yellow robe with nothing on underneath. Officer Poth entered the apartment and independently observed the computer and the chair situated two feet from the window, in clear view from across the courtyard outside. Although Mr. Pinney stated that the blinds were closed, he did not dispute that the girls saw his penis and suggested they were peeping through the blinds. Mr. Pinney confirmed as well that he was wearing a penis ring. This investigation independently corroborated the statements and descriptions provided by the girls, which, under the totality of circumstances known to Officer Poth at the time of the arrest, reasonably caused him to believe that a crime had been committed. *See Easton v. City of Boulder*, 776 F.2d 1441, 1450 (10th Cir. 1985) (upholding use of children's statements as a basis for probable cause where their descriptions of an assault and visual identification of the perpetrator were corroborated by police investigation). Officer Poth had probable cause to arrest Mr. Pinney.

Mr. Pinney contends, however, that there are factual disputes pertaining to what Officer Poth knew at the time of the arrest and whether that information was reliable. *See* Aplt. Br. at 24. But Mr. Pinney does not dispute any of the foregoing facts, nor does he cite any specific evidence to show a material factual dispute; instead, he merely asserts in general there are factual disputes, without identifying any in particular. *See, e.g., id.* at 26 (stating without any record citation that "[t]here also remain issues of material fact as to . . . what . . . the first witness told Officer

6

Poth, and what the second witness told him"); Reply Br. at 4 (stating without any record evidence that "[t]he record is full of factual disputes over what occurred, and what was told to Officer Poth on the night of the arrest").  Although Mr. Pinney contends some facts are unclear, including whether all of the children were on the wall, whether he made eye contact with them, whether he was standing when he allegedly exposed himself, and whether he had an erection, these issues are immaterial to the probable cause determination.  Moreover, it is Mr. Pinney's burden to show that the evidence Officer Poth relied upon was not reasonably trustworthy. *See Romero*, 45 F.3d at 1476 n.1.  On this score, Mr. Pinney speculates that the thirteen-year old's twin sister must have given some potentially unreliable information to Officer Poth, but he offers no evidence to support that assertion. Mr. Pinney also offers an alternative explanation for his behavior, claiming the girls trespassed on the wall and peeped into his apartment while he innocently swayed in his chair and stared into space.  But the district court correctly recognized this explanation does not negate the probable cause determination absent evidence that the probable cause determination was unreasonable.  *See id.* at 1478 n.3 (noting that officers need not forgo an arrest supported by probable cause simply because the defendant offers an alternative, exonerating explanation).  Nothing about Mr. Pinney's explanation suggests Officer Poth's probable cause determination was unreasonable.

Finally, Mr. Pinney contends the district court made improper inferences in favor of the City, in particular concluding that Officer Poth was a credible witness.

He says such credibility determinations are inappropriate for summary judgment, and by finding that Officer Poth was credible, the district court impermissibly accepted Officer Poth's view that he reasonably believed there was probable cause to make the arrest. This argument fails for two reasons.

First, although Mr. Pinney is correct that credibility determinations are inappropriate for summary judgment, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the district court made no credibility determination here. Rather, the court evaluated the historical facts reflected in the girls' statements and in Officer Poth's report to assess whether, based on that information, Officer Poth reasonably believed that a crime had been committed. Mr. Pinney identifies no material factual dispute as to those historical facts, and the court had no need to consider Officer Poth's credibility to determine whether those facts establish probable cause.

Second, the reason the district court did not need to consider Officer Poth's credibility to evaluate probable cause is because his credibility only bears on whether he *subjectively* believed a crime had been committed. *See Keylon v. City of Albuquerque*, 535 F.3d 1210, 1219 (10th Cir. 2008) ("The *only* issue of fact [the officer] points to as appropriate for the jury to decide . . . is his credibility as to whether he believed [the suspect] was [committing a crime]."). But "[o]ur cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Id.* (internal quotation marks omitted). This is because "[p]robable cause is measured against an objective

8

standard of reasonableness." *United States v. Zamudio-Carrillo*, 499 F.3d 1206, 1209 (10th Cir. 2007).

Here, Mr. Pinney contends that Officer Poth unreasonably believed a crime was committed because he incorrectly interpreted the girls' statements. *See*, *e.g.*, Aplt. Br. at 32 ("Appellant here contends the version of events Officer Poth states he relied on is different than the much tamer version in the [girls'] written statements."). He asserts the district court improperly credited Officer Poth's version of what happened to conclude that he reasonably believed that a crime had been committed. Yet Officer Poth's subjective interpretation of what happened and his credibility as to whether he believed that a crime occurred are irrelevant to the probable cause analysis. We are concerned only with whether Officer Poth's determination that a crime was committed was objectively reasonable. We need not evaluate his credibility to make that assessment. Instead, we evaluate the undisputed historical facts disclosed by Officer Poth's investigation, which confirm that Officer Poth's belief was indeed objectively reasonable.

### III

The judgment of the district court is affirmed.

Entered for the Court

Monroe G. McKay
Circuit Judge

9