FILED
United States Court of Appeals
Tenth Circuit

April 19, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TIMOTHY JACK CRALL,

    Plaintiff - Appellant,

v.

GREG WILSON, Elbert County Deputy
Sheriff, in his individual capacity,

    Defendant - Appellee.

No. 18-1313
(D.C. No. 1:17-CV-02317-REB-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

Timothy Crall appeals the district court's dismissal of his 42 U.S.C. § 1983

claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Crall brought suit against Elbert County Deputy Sheriff Greg Wilson for Fourth

Amendment claims related to a search and seizure at Crall's home on January 24, 2017.[1]

At approximately 10:00 p.m. on that date, Wilson and several other deputies arrived

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Crall's claims were dismissed under Fed. R. Civ. P. 12(b)(6), all
facts are taken from his amended complaint. Brown v. Montoya, 662 F.3d 1152, 1162
(10th Cir. 2011).

at a property in Elbert County with the intention of arresting Kent Thompson. They possessed a valid arrest warrant for Thompson related to a non-violent drug crime.

The property consisted of a main house, owned by Scott Guynn, and a fifth wheel trailer in the back yard. Deputies spoke with Guynn, who told them that Crall owned and resided in the trailer and that both Crall and Thompson were inside. According to the amended complaint, "the deputies had information indicating that . . . Thompson was temporarily staying at the . . . address, but had no reason to believe he lived there." And "[t]he deputies on scene were familiar with . . . Thompson, from prior contacts, and knew or should have known that he did not live in the 5th wheel trailer."

Wilson and the other deputies decided to search Crall's trailer in an effort to locate Thompson and execute the arrest warrant. They found the door of the trailer propped open, with a blanket covering the doorframe. After entering the trailer with a police dog, they discovered two additional blankets dividing the trailer into three areas: a kitchen/living room, a hallway, and a bedroom/television area. From the hallway, deputies could see into the bedroom through a gap at the base of the blanket. They observed a space heater and a pair of work boots at the foot of a bed. They could also hear that a television was on.

Crall concedes the deputies announced their presence. However, he alleges he did not hear their announcement due to sounds coming from the space heater and television, as well as his level of intoxication. Wilson then "stated loudly that he would send the dog into the bedroom to bite" the occupant if the occupant did not

2

come into the hallway. When Crall did not emerge, Wilson sent the dog into the bedroom. It bit Crall's knee, and Wilson yanked the dog's leash to pull Crall out of bed. When Crall attempted to brace himself, the dog also bit his right arm, although there is no allegation any deputy ordered the dog to do so. Another deputy handcuffed Crall and he was taken into custody. After Crall was removed from the trailer, deputies located and arrested Thompson, who was also inside.

Crall filed suit against Wilson advancing Fourth Amendment unreasonable search, unreasonable seizure, and excessive force claims under § 1983. Wilson moved to dismiss under Fed. R. Civ. P. 12(b)(6) based on a qualified immunity defense. A magistrate judge recommended granting Wilson's motion. After considering Crall's objections, the district court adopted the magistrate judge's recommendation and dismissed Crall's claims. Crall now appeals.

## II

We review de novo a district court's qualified immunity ruling. Maestas v. Lujan, 351 F.3d 1001, 1007 (10th Cir. 2003). At the motion to dismiss stage, "all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." Brown, 662 F.3d at 1162 (quotation and alteration omitted). In assessing a qualified immunity defense at this stage, we must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was "clearly established" at the time of the challenged conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).

3

In resolving a qualified immunity dispute, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009). We conclude it appropriate to proceed directly to the second prong in this case.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Thomas v. Durastanti, 607 F.3d 655, 669 (10th Cir. 2010) (quotation omitted). "Ordinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains." Patel v. Hall, 849 F.3d 970, 980 (10th Cir. 2017) (quotation and alteration omitted). "In the Fourth Amendment context," whether a right is clearly established "depends very much on the facts of each case, and the precedents must squarely govern the present case." Aldaba v. Pickens, 844 F.3d 870, 877 (10th Cir. 2016) (quotations omitted). However, "in an obvious case," more general "standards can clearly establish the answer, even without a body of relevant case law." Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (quotations omitted).

## A

In his first claim, Crall alleges that Wilson's entrance into the trailer without a search warrant, with the intent of executing an arrest warrant against Thompson, was an unreasonable search. He argues that the law was clearly established that police

4

may not search for the subject of an arrest warrant in the home of a third party absent a search warrant or exigent circumstances. We disagree.

It is not clearly established that entering a third party's residence to execute a valid arrest warrant against an individual "temporarily staying" in the residence violates the third party's Fourth Amendment rights. It is clear that if the subject of an arrest warrant is merely a guest in a home, law enforcement may not enter without a search warrant or exigent circumstances. Steagald v. United States, 451 U.S. 204, 215-216 (1981). However, if the subject of the arrest warrant lives in the residence, law enforcement may enter to execute a valid arrest warrant without a search warrant or exigent circumstances. Payton v. New York, 445 U.S. 573, 603 (1980) ("[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.").

The facts alleged by Crall fall somewhere between these poles. As our court has previously explained, "Payton and Steagald cannot be understood to divide the world into residences belonging solely to the suspect on the one hand, and third parties on the other." Valdez v. McPheters, 172 F.3d 1220, 1225 (10th Cir. 1999). "In the real world, people do not live in individual, separate, hermetically-sealed residences," but rather "live with other people [and] move from one residence to another." Id. Accordingly, the subject of an arrest warrant may be considered to reside somewhere for Fourth Amendment purposes "so long as the suspect possesses

common authority over, or some other significant relationship to, the residence." Id. (quotation omitted).

Crall has not come forward with case law clearly establishing that Thompson should have been treated as a guest rather than a resident. He does not provide any Supreme Court or Tenth Circuit authority addressing entry into an individual's residence where the subject of a valid arrest warrant is also temporarily staying. And his conclusory allegation that police knew or should have known Thompson did not live in the trailer does not overcome the fact that his amended complaint alleges Wilson knew Thompson was "temporarily staying" in the trailer. See Robertson v. Las Animas Cty. Sheriff's Dep't, 500 F.3d 1185, 1193 (10th Cir. 2007) ("Conclusory allegations are not sufficient to state a constitutional violation.").

**B**

Crall's second claim alleges an unreasonable seizure. He argues that Wilson ordered him to exit the bedroom without probable cause or reasonable suspicion to believe he had committed a crime. Crall further contends Wilson's command to the police dog was unreasonable because Crall had no obligation to exit the bedroom.

As with his first claim, Crall fails to identify any authority clearly establishing these propositions. He correctly states that "a sufficiently coercive order requiring an individual to leave his own house counts as a seizure subject to the protections of the Fourth Amendment." Storey v. Taylor, 696 F.3d 987, 993 (10th Cir. 2012). But even assuming Wilson's order for Crall to exit his bedroom constituted a seizure,

6

Crall cites no Supreme Court or Tenth Circuit case establishing that such a seizure violates the Fourth Amendment.

As explained supra, Wilson entered Crall's home to execute a valid arrest warrant, and that entry was not a clearly established Fourth Amendment violation. Law enforcement may temporarily detain individuals, including third parties, in the course of executing a valid arrest warrant in certain circumstances. See Maryland v. Buie, 494 U.S. 325, 336-37 (1990) (law enforcement may conduct a "protective sweep" of a residence without a separate search warrant and without probable cause or reasonable suspicion if officers have a reasonable belief the protective sweep is necessary for safety). We have interpreted Buie's authorization of "protective sweeps" to permit "protective detentions." United States v. Maddox, 388 F.3d 1356, 1362 (10th Cir. 2004). Based on the facts alleged, it would not have been clear to a reasonable officer that a protective detention of Crall was unlawful.

## C

Lastly, Crall advances an excessive force claim based on Wilson's use of his police dog. "[C]laims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). Courts should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

7

Crall fails to identify any precedent considering a similar fact pattern. Instead, he relies exclusively on the Graham factors, arguing this is such an "obvious case" that the general standard clearly establishes that Wilson's conduct was unlawful. Brosseau, 543 U.S. at 199 (quotation omitted). We disagree. "[A]n officer's violation of the Graham reasonableness test is a violation of clearly established law if there are no substantial grounds for a reasonable officer to conclude that there was a legitimate justification for acting as she did." Casey v. City of Federal Heights, 509 F.3d 1278, 1286 (10th Cir. 2007) (quotation omitted).

Wilson could have reasonably believed that use of a police dog was permissible. Our court has held in other circumstances that the use of police dogs does not constitute excessive force. See, e.g., Marquez v. City of Albuquerque, 399 F.3d 1216, 1221 (10th Cir. 2005) (jury "could rationally reach the conclusion that [law enforcement] . . . acted reasonably when, after warning [plaintiff] to halt, he ordered his police service dog to apprehend [plaintiff]"). And in this case, officers announced their presence in the home and Wilson loudly announced that he would deploy the dog if the occupant of the bedroom did not emerge. Officers could not see what the individual in the bedroom was doing, but had reason to think a person was in the room refusing to exit. We therefore reject Crall's argument that this presents an obvious case of excessive force.

## III

**AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge